**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000
DAVID H. STEIN, ESQ.
*Attorneys for Northfield Bank*

------------------------------------------------------X
| In re:                          | : | **UNITED STATES BANKRUPTCY** |
|                                 | : | **COURT FOR THE DISTRICT OF** |
| ROBERT H. SICKLES, *et al*,[1]  | : | **NEW JERSEY** |
|                                 | : | |
| Debtor-in-Possession.           | : | Case No.: 24-14781 (CMG) |
|                                 | : | |
|                                 | : | Chapter 11 |
|                                 | : | |
|                                 | : | Hearing Date: September 24, 2024 |
|                                 | : | at 2:00 p.m. |

------------------------------------------------------X

**OBJECTION OF NORTHFIELD BANK TO APPROVAL OF DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY**

Northfield Bank, by and through its counsel, Wilentz, Goldman & Spitzer, P.A., hereby files this objection to the Disclosure Statement dated August 6, 2024, as amended, and filed pursuant to Section 1125 of the Bankruptcy Code for AHS Realty LLC ("AHS" or the "Debtor") under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and states as follows:

**I.     BACKGROUND**

1. On May 9, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

---

[1] Robert H. Sickles' case is jointly administered with the case of AHS Realty LLC (24-14779)

#14654748.2 157395.077

2. On August 6, 2024, the Debtor filed a Chapter 11 Plan of Reorganization [AHS Docket Entry No.: 45] (the "Plan") together with a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan of Reorganization Proposed by the Debtor-in-Possession [AHS Docket Entry No.: 46] (the "Disclosure Statement").

3. AHS is a real estate holding company which owns the real property commonly known as 1 Harrison Ave., Little Silver, New Jersey 07739 (the "Little Silver Property"). AHS derives its sole income from the collection of rents from Sickles Market, L.L.C. ("Sickles Market"), its tenant, and has no other business.

4. Robert H. Sickles ("Sickles") is an individual who, jointly with his spouse, owns the real property commonly known as 4 Heathcliff Road, Rumson, New Jersey (the "Rumson Property").

5. Northfield Bank is a secured creditor of the Debtor and Sickles in connection with two loans in the aggregate original principal amount of $5,000,000.00, with interest, attorneys' fees and costs continuing to accrue.

6. The first loan is a Line of Credit in the maximum amount of $500,000.00 (the "Line of Credit"), as evidenced by a Promissory Note dated November 9, 2022 executed by Sickles Management, Inc., Sickles Market, L.L.C., Sickles Market Provisions LLC and TST Beverages LLC in favor of Northfield Bank. Both the Debtor and Sickles are guarantors of the Line of Credit. In order to secure the guarantees of the Line of Credit, AHS provided a mortgage encumbering the Little Silver Property and Sickles provided a mortgage encumbering the Rumson Property.

7. The second loan is a term loan in the principal amount of $4,500,000.00 (the "Term Loan" and, together with the Line of Credit, the "Secured Loans"), as evidenced by a

2

Promissory Note dated November 9, 2022 executed by AHS in favor of Northfield Bank. The Term Loan is secured by a commercial mortgage given by AHS in favor of Northfield Bank against the Little Silver Property.

8. The Term Loan is guaranteed by Sickles, which guaranty is secured by a commercial mortgage given by Sickles and his spouse against the Rumson Property

9. The Secured Loans are currently in default.

10. The amount due and owing to Northfield Bank on the Term Loan is no less than $4,700,719.92. Interest currently continues to accrue on the Term Note at the rate of $1,406.69 *per diem* plus legal fees and other such costs. (*See,* Sickles Docket No. 52 and Ex. O).

11. The amount due and owing to Northfield Bank on the Line of Credit is no less than $529,746.96. Interest currently continues to accrue on the Line of Credit Note at the rate of $201.39 *per diem.* Northfield Bank has advanced the sum of $4,511.30 in real estate taxes for the Mortgaged Premises. (*See,* Sickles Docket No. 52 and Ex. O).

12. Northfield Bank has advanced the sum of $12,939.48 in real estate taxes and $8,812.64 in force placed insurance for the Little Silver Property. (*See,* Sickles Docket No. 52).

13. As more fully set forth herein, based upon the absence of full and adequate disclosure, the Court should not approve the Disclosure Statement, nor should it allow the Disclosure Statement and Plan to be sent out to creditors.

## II. ARGUMENT

a. **The Disclosure Statement Should Not be Approved Because it Does Not Contain Adequate Information.**

14. Proper disclosure is "the pivotal concept in reorganization procedure under the Code." Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.),

3

848 F.2d 414, 417 (3d Cir. 1988); see also In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).

15. "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" In re Oneida Motor Freight, Inc., 848 F.2d at 417. "[T]he importance of full and honest disclosure cannot be overstated." Ryan Opers., G.P. v. Santiam Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996).

16. In order to receive Bankruptcy Court approval, the disclosure statement must contain "adequate information" about the debtor, the bankruptcy case, and the plan. 11 U.S.C. § 1125(a)(1).

17. Section 1125 of the Bankruptcy Code defines "adequate information" to mean "information of a kind, and in sufficient detail . . . that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

18. Whether a disclosure statement contains "adequate information" is governed by a flexible standard and is to be determined by the bankruptcy court on a case-by-case basis. In re Oneida Motor Freight, Inc., 848 F.2d at 417; see also In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995). The "adequate information" standard requires a plan proponent to include in a disclosure statement all information that would enable holders of claims to take an informed position on the proposed reorganization plan. Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991).

19. "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." In re Cardinal

4

Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); see also In re Stanley Hotel, Inc., 13 Bankr. 926, 929 (Bankr. D. Colo. 1981). "A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." Id. at 765. "The disclosure statement must contain information that is material, important and necessary for creditors and shareholders to properly evaluate a proposed plan and thus enable the creditors and shareholders to make a reasonably informed decision on the plan." In re William F. Gable Co., 10 B.R. 248, 249 (Bankr. N.D. W. Va. 1981).

20. "A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported expectations as to the future course of the business. . . ." Century Glove, Inc. v. First Am. Bank of N.Y., 860 F.2d 94, 100 (3d Cir. 1988) (internal quotation marks omitted).

21. Moreover, courts have set forth a non-exclusive list of the type of information which should be included in a disclosure statement:

    a. The circumstances that gave rise to the filing of the bankruptcy petition;

    b. A complete description of the available assets and their value;

    c. The anticipated future of the debtor;

    d. The source of the information provided in the disclosure statement;

    e. The condition and performance of the debtor while in Chapter 11;

    f. Information regarding claims against the estate;

    g. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

    h. The accounting and valuation methods used to produce the financial information in the disclosure statement;

    i. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insider, directors, and/or officers of the debtor;

5

    j.   A summary of the plan of reorganization;

    k.   The collectability of any accounts receivable;

    l.   Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    m.   Information relevant to the risks being taken by the creditors;

    n.   The actual or projected value that can be obtained from avoidance actions;

    o.   The existence, likelihood and possible sources of non-bankruptcy litigation; and

    p.   The relationship of the debtor with any affiliates.

In re Cardinal Congregate I, 121 B.R. at 765; In re Source Enters., Inc., 2007 LEXIS 4770, *7-8 (Bankr. S.D.N.Y. 2007); In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001). There are numerous deficiencies in the Disclosure Statement for many of the categories of information identified above and, accordingly, the Debtor has failed to provide adequate information as required.

    22.   First, the Disclosure Statement references a "Plan Sponsor" through which it intends to accomplish payments under the Plan; however, no information whatsoever is provided regarding the identity of this Plan Sponsor, its financial ability to fund a Plan, its assets which would be used to fund a Plan or pledged in the endeavor, or its ability to secure financing if its assets are insufficient to such a purpose. The Disclosure Statement also does not provide any detail on the waterfall of the returns to the estate and creditors which would result from the new business partnership. These items are of significant concern to creditors and any prospective lender when analyzing a debt structure to consider extending financing.

    23.   Likewise, the Disclosure Statement consistently makes reference to "the Plan Sponsor Agreement" upon which the Plan will be based, yet no copy of such an agreement is attached to the Disclosure Statement, nor are any of its terms even set forth. Since the Disclosure

6

Statement asserts that "The Plan will be funded through the Plan Sponsor Agreement" and "The details of funding and anticipated timing thereof are detailed in the Plan Sponsor Agreement" (Disclosure Statement, Section D.1.), its blatant omission from the Plan and Disclosure Statement calls into question whether the Plan is proposed in good faith.

24.     Second, no evidence has been presented regarding the value of the Little Silver Property or the Rumson Property, whether Northfield Bank's treatment (value, interest rate and duration) is fair and equitable as proposed under the Plan, and whether any unnecessary risk is being shifted to Northfield Bank particularly where the timing, circumstances and conditions of any "Closing", including required governmental approvals, are not defined and the "PSA" (Purchase and Sale Agreement) is not attached to the Disclosure Statement. Furthermore, the Disclosure Statement should be clear, that absent payment in full as provided by the loan documents and the provisions contained in 11 U.S.C. § 506 (b) of the Bankruptcy Code, Northfield does not consent to a transfer of title to the Little Silver Property and/or the Rumson Property to any third party, including the Plan Sponsor, nor does it consent to subdivision for all or any portion of its collateral.

25.     Third, Debtor fails to provide adequate information with respect to its anticipated future and the likelihood of compliance for the duration of the Plan and repayment to Northfield Bank.

26.     Fourth, Debtor fails to include all necessary financial information, cash flows, financial statements, sources and uses statements for confirmation, valuations and/or pro forma projections, a liquidation analysis, and a preference analysis which would be relevant to each creditor's determination as to whether to accept or reject the Plan, as well as to the evaluation

of the risks being undertaken by the creditors with acceptance. Specifically, the Debtor fails to provide a complete description and value of all assets in which the estate has an interest.

27. Fifth, the Debtor does not provide actual appraisals for real property, nor does it provide other evidence, information or economic analysis to legitimize any valuation and treatment of the assets of the estate or the treatment of claims/liens.

28. Sixth, the Debtor fails to provide adequate and necessary information regarding claims of the estate and all non-real estate assets.

29. Seventh, the Debtor fails to provide adequate information regarding the future management of the Debtor. While asserting that Sickles "shall remain responsible for the Post-Confirmation Management of AHS Realty, LLC, except as modified by the Plan Sponsor Agreement" (Disclosure Statement, Section D.2), the Disclosure Statement fails to divulge the amount of compensation to be paid to Sickles and insiders, what modification is provided for in the Plan Sponsor Agreement, or any New Value Contribution to be paid by Sickles to the Debtor.

30. Eighth, given the lack of transparency, as well as the paucity of information, it is unclear whether the Debtor and/or the Plan Sponsor have the means and ability to consummate and perform under the Plan. Clearly, this should warrant further disclosure.

31. Such details must be shared with the Bankruptcy Court and creditors prior to any determination being made regarding the Disclosure Statement. The Debtor has failed to provide sufficient details to make an informed evaluation of the Disclosure Statement or the Plan.

**b.    The Disclosure Statement Should Not be Approved Because the Plan Violates the Law and is Unconfirmable.**

32. A chapter 11 plan and disclosure statement cannot be sent out to creditors where the Plan is unconfirmable as a matter of law and is not fair and equitable per Section 1129 of

the Bankruptcy Code. In <u>In re American Capital Equipment, LLC</u>, 688 F.3d 145 (3d Cir. 2012) the Third Circuit held that a bankruptcy court may determine at the disclosure statement stage that a proposed plan is unconfirmable without first holding a confirmation hearing. The Third Circuit found that the Plan was patently unconfirmable because it did not meet the good faith requirement of Section 1129(a)(3).

33. The Chapter 11 Plan in this case is patently unconfirmable and does not meet the good faith requirement of Section 1129(a)(3) since, among other things, the Debtor has failed to provide full disclosure to the Bankruptcy Court and to creditors through which an informed evaluation of the Disclosure Statement or the Plan might be made.

## JOINDER AND RESERVATION OF RIGHTS

Northfield Bank reserves the right, as appropriate, to augment this objection prior to or at the hearing on the Disclosure Statement, to present such other objections following review of any response filed by the Debtor and further joins in and adopts any other objection filed by other creditors or parties-in-interest in these proceedings.

## CONCLUSION

For the reasons set forth hereinabove, Northfield Bank respectfully requests that the Court enter an Order: (i) sustaining the Objection filed by Northfield Bank; (ii) denying approval of the Debtor's Disclosure Statement; and (iii) and granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: September 9, 2024                Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**
*Attorneys for Northfield Bank*

/s/ *David H. Stein*
 DAVID H. STEIN

9

#14654748.2 157395.077