# EXHIBIT A

Plan Support Agreement

*EXECUTION COPY*

# Amended Plan Support Agreement[1]

This Amended Plan Support Agreement (together with the exhibits (including the Chapter 11 plan ("**Plan**") attached hereto as **Exhibit #1**), as each may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof ("**PSA**") is entered into by the undersigned parties to memorialize their agreements with respect to the Debtors' exit from Chapter 11 and related agreements ("**Transaction**") by and among the parties. This PSA is binding on the undersigned parties ("**Signatories**"), and on any third party who subsequently executes a joinder to it ("**Subsequent Signatories**," together with the Signatories, the "**Parties**") in the form attached hereto as **Exhibit #2** ("**Joinder**").  In the event of a conflict between this PSA and the Plan, the terms of the PSA control.

***WHEREAS***:

I. A motion ("**MOU Motion**") seeking to authorize the Debtors to enter into a memorandum of understanding ("**MOU**"), effective as of August 12, 2024 ("**Effective Date**") was filed on August 16, 2024, in both Robert H. Sickles' ("**Bob**") Chapter 11 [Dkt #56] and in AHS Realty, LLC's ("**AHS**, together with Bob, the "**Debtors**") Chapter 11 cases.

II. An order approving the joint administration of Sickles' and AHS' Chapter Cases was entered on August 27, 2024 [Dkt #81 in Bob's case].  By those orders, all subsequent pleadings for both cases are to be filed in the Sickles case only, and all docket entries for both cases will be made in the Sickles case only. An order approving the MOU Motion was entered on August 28, 2024 [Dkt #83] ("**MOU Order**").

III. The Parties have engaged in good faith, arms-length negotiations and agreed to enter into certain restructuring transactions in accordance with the terms and conditions set forth in this PSA, including the preparation of the Plan.

IV. Northfield Bank ("**Northfield**") has valid, first priority and properly perfected security interest and mortgages against various assets owned by the Debtor to secure claims currently held by Northfield (collectively, the "**Northfield claims**").

V. Pursuant to this PSA and the Plan, the following assets will vest in an entity or entities controlled by 1663 Partners, LLC ("**1663**")[2]:

---

[1] This PSA will be filed as an exhibit to the Disclosure Statement.

[2] The Parties contemplate a single "Newco" owned by 1663 or an affiliate will emerge from the Chapter 11 Cases and that Newco, in turn, will own 100% of three subsidiaries, "Market Newco," "Brand Newco," and "Land Newco" on the Effective Date.

    a. 100% of the equity of AHS (which in turn owns the approximately six-acre parcel of real estate at 1 Harrison Avenue in Little Silver, NJ).

    b. 100% of the equity of Sickles Market, LLC ("**Sickles Market**," which in turn owns the assets of the retail store that operated under the Sickles Market name and the real estate on which it is situated as reflected in county land records).

    c. 100% ownership of the real property located at 5 Harrison Avenue in Little Silver, NJ including a vacant house residing thereon (such real property and house, "**5 Harrison**").

    d. 100% of the real property owned by Bob including the house residing thereon ("**Residence**") but none of the personal property located in the house or otherwise on the property.

VI. The Plan provides that the allowed Northfield claims, allowed administrative, and allowed priority claims will be paid in full except to the extent, if any, a specific holder of such a claim agrees to a different treatment; most or all allowed secured claims, as well as all sales tax claims and NJ DOL claims will be paid in full; unsecured claims will be paid more than they would receive in a Chapter 7 liquidation; Sickles Market will be reopened, thus bringing back jobs and a pillar of the local community; the subject real estate will be able to be put to its highest and best use; and Bob will be afforded a fresh start.

VII. The Plan will provide a discharge of all scheduled or filed claims against Bob.

VIII. The deadline to execute the PSA under the MOU Order was 10/26/24, subject to extension by agreement among the Parties to the MOU. The Parties so agreed on multiple occasions and it was ultimately executed prior to the ultimately agreed-upon deadline, which was coterminous with the Debtors' extended deadline of 11/22/24 to file a chapter 11 plan in their cases. A chapter 11 plan was filed by the extended deadline, together with (A) a draft disclosure statement; (B) a motion to conditionally approve the disclosure statement and for confirmation procedures, and (C) a motion to approve the redaction of certain elements of the original PSA that had been filed with the redaction motion ("**Redaction Motion**"). A hearing was held on these motions on 12/10/24.

---

1663 is owned and will continue to be controlled by 1663 or an affiliate of 1663 after the Effective Date and 1663, in turn, will continue to be controlled by its current owners. Any subsequent transfer of an asset owned directly or indirectly by Newco will not be in contradiction of the benefits being granted to the Incumbent Parties under the terms of this MOU. In the event of such transfer, both the transferee and 1663 shall continue to be bound by the obligations set forth in this PSA and the Plan.

2

IX. During the 12/10/24 hearing, the Parties agreed to certain modifications of the original PSA that mooted the need to request the relief requested it the Redaction Motion. The Parties subsequently amended the original PSA to reflect the agreed upon modifications, and this Amended Plan Support Agreement was entered into by the Parties on 12/11/24.

***NOW, THEREFORE***, in consideration of the promises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, covenant and agree as follows:

1. **Use of Funds**

    a) 1663 commits, subject to the terms of the Plan, to fund a total $8.5 million of (a) Plan distributions and (b) other costs pursuant to that certain confirmation delivered by 1663 to a letter delivered to it by Debtors (such letter and confirmation, together, the "***Stolz Letter***," and both delivered on 11/22/24).

    b) Distributions made on account any allowed claim, including the Northfield claim, shall be paid the full amount of the claim in the same manner and to the same extent regardless of who the holder of such claim is. The Parties specifically contemplate and agree that: (i) 1663 may acquire claims at a discount; and (ii) 1663 shall be entitled to distributions on account of such claims without taking into account any such discounts. For clarity, in the hands of 1663, the allowed amount of the Northfield claim will be no less than $5,230,466.88 as of 8/9/24 + accrued and accruing fees and interest.

    c) If 1663 holds the Northfield claim at the time confirmation of the Plan, or acquires any other claim at a discount prior to the confirmation of the Plan, then the full amount of those claims *minus* 50% of any discount from the full amount of those claims that 1663 was able to realize shall be credited toward the $8.5 million funding obligation.

2. **Claims Classification & Treatment, and Related Matters.**

    a. The Plan, including its provisions regarding claim classification and treatment, are incorporated herein to the extent not inconsistent with the terms of this PSA.

    b. The Parties agree to (i) neither seek to surcharge pursuant to Bankruptcy Code §506(c) nor any similar principle of law, any collateral securing the Northfield claim if held by 1663, (ii) not seek a substantial contribution claim except as provided in this PSA; and (iii) not object to any claim to the extent the holder of such claim is 1663 nor seek to invalidate or subordinate any claim held by 1663.

3. **Representations & Warranties of Incumbent Parties.** Each of AHS Realty LLC, Sickles Market LLC, Robert H. Sickles, Sasha Sickles, Tori Sickles, Maria Carigan, and Sickles

3

(collectively, the "**Incumbent Parties**") hereby separately represent and warrant that the following statements are true and complete to the best of the knowledge, after due inquiry:

   a. They are unaware of any trust fund taxes other than those which have been disclosed in the Plan or Disclosure Statement and which are to be paid under the Plan.

   b. They are unaware of any material business records that have not been shared with 1663.

   c. They have not breached and are unaware of any other Party's breach of the MOU.

   d. They are not aware of any assets owned by Bob other than those described in Section 4 of the Recitals here.

4. **Additional Agreements of the Debtors.** The Debtors agree to:

   a. Use best efforts to pursue confirmation of the Plan with all due speed.

   b. Not seek or agree to any extension of the deadlines related to confirmation without 1663's agreement.

   c. Confer with 1663 and potential Assignees for Sickles Market, LLC, and commence an assignment for the benefit of creditors for Sickles Market, LLC no later than five days after requested to do so by 1663 by making an assignment to an assignee acceptable to 1663 in its sole discretion.

   d. Object to claims in form and substance acceptable to 1663 in its sole discretion no later than 11/25/24.

   e. Act in good faith and use their best efforts to support and successfully complete the solicitation in accordance with the terms of this PSA.

   f. Expressly consult in good faith with 1663 regarding the form and substance of any proposed pleading that may impact any of the transactions contemplated by this PSA.

   g. Confer with 1663 and obtain its written consent prior to agreeing to allow or disallow, and prior to objecting to or settling any claim.

    h. Provide draft copies of all pleadings and other documents that may reasonably be expected to impact any of the transactions contemplated by this PSA, unless waived in any instance, at least three days prior to the date when the applicable Debtor intends to file any such pleading or other document.

    i. Continue to pursue the TST/PACA claim settlement in order to settle all PACA claims.

    j. Rely on the 2024 appraisals conducted by Northfield and testimony of Emerald Advisors in support of confirmation.

    k. Do all things reasonably necessary and appropriate in furtherance of confirming and consummating the Plan in accordance with, and within the time frames contemplated by this PSA.

    l. Affirmatively support 1663's substantial contribution claim, but subject to (i) such claim's subordination to all other administrative claims; (ii) such claim not being payable until a minimum of $8.5 million of allowed claims (including the Northfield claim) are paid under the Plan or pursuant to the Stolz Letter; and (iii) such claim being unenforceable against Bob, AHS or the Bankruptcy Estates should the Plan not be confirmed by the Court.

    m. Debtors (and Genova Burns) agree that all legal fees billed and to be billed by Genova Burns will be discounted by 20% and that all fees incurred on and after 11/22/24 shall be subject to an aggregate cap of $200,000; provided, however, such cap shall not apply to work performed in litigating against Metrovation or in litigating the right of the Debtors to cramdown the plan; provided, further that in the event any such litigation is required, 1663 shall have the right to select special litigation counsel to perform such work (with the understanding that such counsel shall be counsel to the Debtors rather than to 1663).

**5. Agreement of Incumbent Parties.**

    a. The Incumbent Parties hereby agree that the terms of Section 3(d) of the MOU are modified such that the Exclusivity Period (as that term is defined therein) is hereby extended until the later of the 60th day following the Bankruptcy Court's confirmation of the Plan and 14 days after the Bankruptcy Court's denial of confirmation after a full hearing on the merits. All other terms of Section 3(d) of the MOU remain unchanged.

**6. <u>Representations, Warranties, and Covenants of all Parties.</u>**

a. So long as this PSA has not been terminated in accordance with the terms hereof, each Party agrees that it shall:

   i. Subject to the receipt by such Party of the Disclosure Statement and other solicitation materials in respect of the Plan, timely vote or cause to be voted, all of its claims against the Debtors to accept the Plan by delivering its duly executed and completed ballots accepting the Plan on a timely basis following the commencement of the solicitation; provided that such vote and release may be immediately revoked and deemed *void ab initio* by such Party upon termination of this PSA prior to the confirmation of the Plan pursuant to the terms hereof.

   ii. Not change, revoke, or withdraw (or cause to be changed, revoked, or withdrawn) any such vote or release described in clause (a) above.

   iii. Not (i) object to, delay, postpone, challenge, reject, oppose, impede, or take any other action that would reasonably be expected to prevent, interfere with, delay, or impede, directly or indirectly, in any material respect, the approval, acceptance, or implementation of the Plan, (ii) directly or indirectly solicit, encourage, propose, file with the Bankruptcy Court, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, proposal or offer of dissolution, winding up, liquidation, or plan of reorganization for the Debtors other than the Plan, or (iii) otherwise take any action that could in any material respect interfere with, delay, or postpone the consummation of the Plan.

   iv. Support and take all commercially reasonable actions necessary or reasonably requested by the Debtors and 1663 to facilitate the solicitation, approval of the Disclosure Statement, and confirmation and consummation of the Plan (it being understood that the Party shall not be required to incur any material costs, expense, or liability in connection therewith).

   v. Not directly or indirectly, in whole or in part, sell, contract to sell, give, participate, encumber, grant a security interest in, offer, sell any option or contract to purchase, transfer, loan, issue, pledge, hypothecate, assign, or otherwise dispose of (each, a "**Transfer**"), any of its claims or any option thereon or any right or interest therein or any other claims against or interests in either Debtor (collectively, the "**Claims**") (including grant any proxies, deposit any Claims into a voting trust, or enter into a voting agreement with respect to any such Claims), unless the transferee thereof either (A) is a Party , or (B) prior to

6

such Transfer, agrees in writing for the benefit of the Parties to become a Party and to be bound by all of the terms of this PSA applicable to Parties (including with respect to any and all Claims it already may hold against either Debtor prior to such Transfer) by executing a joinder agreement substantially in the form attached hereto as Exhibit #2, and delivering an executed copy thereof within two business days following such execution, to (A) Daniel M. Stolz via email to DStolz@genovaburns.com  and (B) Jonathan P. Friedland via email to jfriedland@muchlaw.com in which event (A) the transferee shall be deemed to be a Party hereunder to the extent of such transferred rights and obligations and (B) the transferor shall be deemed to relinquish its rights (and be released from its obligations) under this PSA to the extent of such transferred rights and obligations, in each case for the duration of the period commencing on the date hereof and ending on the date on which this PSA is terminated in accordance with this PSA. Each Party agrees that any Transfer of any Claims that does not comply with the terms and procedures set forth herein shall be deemed void ab initio, and the applicable Debtor and each other Party shall have the right to enforce the voiding of such Transfer.

b. Each Party represents, warrants, and covenants as to itself only, severally (and not jointly), to each other Party that the following statements are true, correct, and complete as of the date hereof (or as of the date a Subsequent Signatory becomes a party hereto):

   i. Such Party is validly existing and in good standing under the laws of the state of its incorporation or organization, and has all requisite corporate, partnership, limited liability company, or similar authority to enter into this PSA and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder. The execution and delivery of this PSA and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership, or other similar action on its part.

   ii. This PSA is the legally valid and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

   iii. The execution, delivery, and performance by such Party of this PSA does not and will not require any material registration or filing with, consent or approval of, or notice to, or other action, with or by, any federal, state, or

      governmental authority or regulatory body, except such filings as may be necessary or required by the SEC.

    iv. The execution, delivery, and performance by such Party of this PSA does not and will not (A) violate any material provision of law, rule, or regulation applicable to it or its charter or bylaws (or other similar governing documents), or (B) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it is a party.

    v. Each Party severally (and not jointly) represents and warrants to the that, as of the date hereof (or as of the date such Consenting Creditor becomes a party hereto), such Consenting Creditor (A) is the owner of the aggregate principal amount of Claims, set forth below its name on the signature page hereto (or below its name on the signature page of a Joinder Agreement for any Subsequent Signatory), and/or (B) has, with respect to the beneficial owner(s) of such Claims, as applicable, (1) sole investment or voting discretion with respect to such Claims, (2) full power and authority to vote on and consent to matters concerning such Claims, or to exchange, assign, and Transfer such Claims, and (3) full power and authority to bind or act on the behalf of, such beneficial owner(s).

c. <u>Additional Claims</u>. Nothing herein shall be construed to restrict a Party's right to acquire Claims after signing this PSA. Each Party agrees that if any Party acquires additional claims, then (A) such claims shall be subject to this PSA (including the obligations of the Parties under this Section), and (B) following such acquisition, such Party shall promptly notify (i) Daniel M. Stolz via email to DStolz@genovaburns.com and (ii) Jonathan P. Friedland via email to jfriedland@muchlaw.com of the amount and types of claims it has acquired.

d. <u>Communications</u>. Each Party agrees, and each Party hereby expressly and irrevocably directs their attorneys, advisors, and other representations, not to issue any public statement about the Debtors or their bankruptcy cases without first obtaining the prior written consent of 1663. A public statement includes any post-petition communication with any media outlet, member of the press, blogger, or social media account, any website or blog post, the issuance of a press release, or any other public statement. Each Party also warrants that they have deleted all social media and website posts made post-petition on their respective social media accounts and websites they control unless otherwise approved by 1663. Notwithstanding the foregoing, this section shall not be construed to limit any

Party's right or responsibility to communicate with the bankruptcy court and parties in interest in the bankruptcy cases.

e. The representations, warranties, and covenants of the Parties in this Section 6 are several and not joint.

7. **Post- Confirmation Agreements.** 1663 has entered into a letter agreement ("**Letter Agreement**") pursuant to which it has hired certain insiders of the Debtors as consultants and will hire certain insiders of the Debtors in various capacities. The terms of the Letter Agreement are substantially the same as those disclosed in the MOU. Parties wishing to view the MOU can find same at Docket Entry No. 56-1.

8. **Termination.**

    a. This PSA shall terminate automatically without any further required action or notice:

        i. Three business days following delivery of a notice of a Termination Event from 1663 in the event of a Termination Event not caused by 1663. A "**Termination Event**" shall mean the breach in any material respect of any of the undertakings, representations, warranties, or covenants set forth herein which remains uncured for a period of three business days after the receipt of written notice of such breach.

        ii. Three business days following delivery of a notice of a Termination Event from the Debtors in the event of a Termination Event caused by 1663.

    b. Effect of Termination. Subject to Sections 13, upon the termination of this PSA in accordance with this Section 8, this PSA shall become void and of no further force or effect, and each Party shall, except as otherwise provided in this PSA, be immediately released from its respective liabilities, obligations, commitments, undertakings, and agreements under or related to this PSA, shall have no further rights, benefits, or privileges hereunder, and shall have all the rights and remedies that it would have had and shall be entitled to take all actions that it would have been entitled to take had it not entered into this PSA, and no such rights or remedies shall be deemed waived pursuant to a claim of laches or estoppel; provided that in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination.

    c. Specific Performance/Remedies. Each Party recognizes and acknowledges that a breach by a Party of any covenants or agreements contained in this PSA would cause the other Parties to sustain damages for which such Parties would not have

9

an adequate remedy at law for money damages and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy. Each Party hereby waives any requirement for the security or posting of any bond or similar instrument in connection with such remedies.

9. **Definitive Documentation; Good Faith Cooperation; Further Assurances.** Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the Plan, as well as the negotiation, drafting, execution, and delivery of all associated definitive documentation. Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this PSA, and shall refrain from taking any action that would frustrate the purposes and intent of this PSA.

10. **Amendments and Waivers**. Except as otherwise expressly set forth herein, this PSA, including any exhibits or schedules hereto, may not be waived, modified, amended, or supplemented except in writing signed by the Debtors, 1663 and the Incumbent Parties; provided that any waiver, change, modification, or amendment to this PSA that adversely affects the economic recoveries or treatment of any Subsequent Signatory compared to the recoveries set forth in the Plan, may not be made without the written consent of each such adversely affected Subsequent Signatory.

11. **Effectiveness**. This PSA shall become effective and binding upon each Party upon the execution and delivery by such Party of an executed signature page hereto.

12. **Governing Law; Jurisdiction; Waiver of Jury Tria**l.

    a. This PSA shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New Jersey, without giving effect to the conflict of laws principles thereof. Each of the Parties irrevocably agrees that any legal action, suit, or proceeding (each, a "***Proceeding***") arising out of or relating to this PSA brought by any Party or its successors or assigns shall be brought and determined in any federal or state court in the State of New Jersey ("***New Jersey Courts***"), and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the New Jersey Courts for itself and with respect to its property, generally and unconditionally, with regard to any such Proceeding arising out of or relating to this PSA and the Plan. Each of the Parties agrees not to commence any Proceeding relating hereto or thereto except in New Jersey Courts,

10

    other than Proceedings in any court of competent jurisdiction to enforce any judgment, decree, or award rendered by any New Jersey Court. Each of the Parties hereby irrevocably and unconditionally waives and agrees not to assert that a Proceeding in any New Jersey Court is brought in an inconvenient forum or the venue of such Proceeding is improper. Notwithstanding the foregoing, during the pendency of the Chapter 11 Cases all Proceedings shall be brought in the Bankruptcy Court.

    b. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any Proceeding directly or indirectly arising out of or relating to this PSA or the transactions contemplated hereby (whether based on contract, tort, or any other theory).

13. **Survival**. Notwithstanding the termination of this PSA, those provisions of this PSA, including §2(b), which by their nature would be expected to survive termination shall so survive and shall continue in full force and effect in accordance with the terms hereof; provided that any liability of a Party for failure to comply with the terms of this PSA shall survive such termination.

14. **Headings**. The headings of the sections, paragraphs, and subsections of this PSA are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this PSA.

15. **Successors and Assigns; Severability**. This PSA is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators, and representatives. If any provision of this PSA, or the application of any such provision to any person, entity, or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this PSA shall continue in full force and effect. Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this PSA so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

16. **Counterparts**. This PSA may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this PSA delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

17. **Notices**. All notices hereunder shall be in writing and delivered by electronic mail to the following email addresses: (a) Daniel M. Stolz via email to DStolz@genovaburns.com and (b) Jonathan P. Friedland via email to jfriedland@muchlaw.com.

18. **Settlement Discussions**. This PSA is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic, this PSA and all negotiations relating thereto shall not be admissible into evidence in any Proceeding other than a Proceeding to enforce its terms.

19. **Prior Negotiations; Entire Agreement**. This PSA, including the exhibits and schedules hereto (including the Plan), constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof, except that the Parties acknowledge that any confidentiality agreements executed between prior to the execution of this Agreement shall continue in full force and effect.

20. **No Solicitation; Adequate Information**. This PSA is not and shall not be deemed to be a solicitation for votes for the acceptance of the Plan (or any other Chapter 11 plan) for the purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise or a solicitation to tender or exchange any securities. The votes of the holders of claims against the Debtors will not be solicited until such holders who are entitled to vote on the Plan have received the Plan, the Disclosure Statement, and related ballots, and other required solicitation materials. In addition, this PSA does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

21. **Interpretation; Rules of Construction; Representation by Counsel**. When a reference is made in this PSA to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this PSA unless otherwise indicated. Unless the context of this PSA otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire PSA, (c) the words "include," "includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this PSA and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

*Each Party whose signature appears below represents and warrants that they have read and understand the PSA, had the opportunity to review it with counsel, and signed this signature page as of the Effective Date.*

**AHS Realty LLC**
By Robert H. Sickles, Its Sole Member & Manager
x  /s/ *Robert H. Sickles*

**Sickles Market LLC**
By Robert H. Sickles, Its Sole Member & Manager
x  /s/ *Robert H. Sickles*

x  /s/ *Robert H. Sickles*
Robert H. Sickles, individually

x  /s/ *Leslie Sickles*
Leslie Sickles, individually

x  /s/ *Sasha Sickles*
Sasha Sickles, individually

x  /s/ *Tori Sickles*
Tori Sickles, individually

x  /s/ *Maria Carigan*
Maria Carigan, individually

**1663 Partners, LLC**
By Jennifer Griffin Karp, Its Co-Managing Member & Authorized Signatory
x /s/ *Jennifer Griffin Karp*

**AGREED AS TO §4(m)**
**Genova Burns**
By Daniel M. Stolz, Partner
x  /s/ *Daniel M. Stolz*

13

Exhibit #1 to PSA

**CHAPTER 11 PLAN**

Exhibit #2 to PSA

**JOINDER AGREEMENT**

The undersigned ("***Joining Party***") hereby (i) acknowledges that they have read and understands that certain Plan Support Agreement (the **"PSA"**), with an Effective Date of _____, among _____; and (ii) agrees to be bound by the terms and conditions thereof to the extent and in the same manner as if the Joining Party was a Party, and shall be deemed a Subsequent Signatory under the terms of the PSA. All notices and other communications to the Joining Party given or made pursuant to the PSA shall be sent to the address indicated in the signature block below. Capitalized terms not defined herein have the meaning ascribed to them in the PSA.

Date Executed: _____

    [JOINING PARTY NAME]

    By_____

    Name: _____
    Title: _____

    **Claims of Joining Party:**
    _____

    **Notice Address for Joining Party:**
    [JOINING PARTY NAME]
    [ADDRESS]
    Attn: [NAME]
    Email: [EMAIL ADDRESS]