**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**GENOVA BURNS LLC**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone:  (973) 467-2700
*Counsel for Robert H. Sickles and AHS Realty, LLC.*
**DANIEL M. STOLZ, ESQ.**
**JEFFREY R. RICH, ESQ.**
**DONALD W. CLARKE, ESQ.**
**JACLYNN N. McDONNELL, ESQ.**
dstolz@genovaburns.com
jrich@genovaburns.com
dclarke@genovaburns.com
jmcdonnell@genovaburns.com

| | |
|---|---|
| In re:<br><br>**ROBERT H. SICKLES,**<br><br>Debtor-in-Possession. | Case No.: 24-14781<br><br>Judge: Hon. Christine M. Gravelle<br><br>Chapter 11 |
| In re:<br><br>**AHS REALTY LLC,**<br><br>Debtor-in-Possession. | Case No.: 24-14779<br><br>Judge: Hon. Christine M. Gravelle<br><br>Chapter 11 |

# SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ROBERT H. SICKLES AND AHS REALTY LLC

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**Section 1.01 – Defined Terms For the purpose of the Plan**, the following terms set forth in this Article I shall have the respective meanings set forth below.

**"Administrative Claim"** means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtors after the Petition Date of preserving the Estate or operating the Debtors' business; (b) Professional Fee Claims; (c) US Trustee Fees; and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, including the DIP Claim, if any.

**"Administrative Claims Fund"** means a fund to be established by the Plan Proponents on the Effective Date, and administered thereafter by the Plan Administrator, in an amount sufficient to pay Allowed Administrative Claims, Allowed DIP Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, together with the amount of $50,000, which shall be utilized to fund the fees and expenses of the Plan Administrator including the Plan Administrator's advisors (unless the Plan Administrator agrees to a lesser amount).

**"AHS Plan Consideration"** means all the assets owned by AHS prior to the Effective Date.

**"Allowed"**, with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) is determined to be valid by the Debtors, Newco, or the Plan Administrator; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be Allowed for purposes of distribution under the Plan.

**"Assets"** means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the sale of Assets), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds from all of the foregoing.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or as hereafter amended, as applicable to the Chapter 11 Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for New Jersey, which has jurisdiction over the Chapter 11 Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Cases.

**"Bar Date"** means such date(s) established by the Bankruptcy Court as the last date for filing proofs of claim or requests for allowance of Administrative Claims, as applicable, against the Debtors.

**"Business Day"** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means cash and cash equivalents denominated in U.S. dollars.

**"Causes of Action"** means any and all claims, rights, and causes of action that could have been brought or can be brought now by or on behalf of the Debtors or the Estate arising before, on, or after the Petition Date, whether they are known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to: (a) those referred to in the Disclosure Statement and listed on the schedule filed with the Plan Supplement; (b) derivative claims; (c) rights of setoff or recoupment; and (d) claims on contracts or breaches of duty imposed by law. Notwithstanding the foregoing, Robert Sickles shall retain any claims for refunds on his personal taxes.

**"Chapter 11 Cases"** means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors, and jointly administered for procedural purposes under Robert H. Sickles, Chapter 11 Case No. 24-14781, currently pending before the Bankruptcy Court.

**"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against a Debtor, whether or not asserted, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

**"Class"** means a category of Claims or Equity Interests set forth in Article __ of the Plan.

**"Collateral"** means any property or interest in property of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Cases.

**"Confirmation Hearing"** means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of the Plan as it may be modified hereafter from time to time.

**"Confirmation Order"** means the order(s) confirming the Plan.

**"Debtors"** means, collectively, Robert H. Sickles and AHS Realty LLC.

**"DIP Claim"** means a Claim of the DIP Lender arising under the DIP Order, if any.

**"DIP Lender"** means the Plan Co-Proponent.

**"DIP Loan Agreement"** means any credit or loan agreement approved by the Bankruptcy Court pursuant to a DIP Loan Order.

**"DIP Loan Order"** means any order of the Bankruptcy Court authorizing, among other things, a Debtor to enter into and make borrowings under the DIP Loan Agreement, and granting certain rights, protections, and liens to and for the benefit of the DIP Lender.

**"Disclosure Statement"** means the disclosure statement for the Plan filed with the Bankruptcy Court by the Debtors in accordance with section 1125 of the Bankruptcy Code, including all exhibits and schedules thereto, as it may be amended from time to time.

**"Disclosure Statement Order"** means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim Plan Administrator has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

**"Disputed Claims Reserve"** means a reserve for a portion of the General Unsecured Claims Cash Distribution to be held in a Disputed Claims Reserve Account for the benefit of holders of Disputed Claims in an amount equal to the Distributions such holders of Disputed Claims would be entitled to receive on the date the General Unsecured Claims Cash Distribution is distributed if such Disputed Claims were Allowed in their full or, if applicable, estimated amounts on such date.

**"Disputed Claims Reserve Account"** means an account or accounts established and funded by the Debtors and administered by the Plan Administrator for payment of Disputed Claims that become Allowed Claims after the Effective Date, and which shall hold Cash and/or other Assets as applicable, for the benefit of the holders of Disputed Claims.

**"Distribution"** means the distribution to holders of Allowed Claims in accordance with the Plan of any Assets, or other consideration distributed under Article __ herein.

**"Distribution Address"** means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed in respect of a particular Claim, "Distribution Address" means the address set forth in the applicable Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

**"Distribution Date"** means any date on which the Plan Administrator determines that a Distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim) in light of, for example, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a Distribution.

**"District Court"** means the United States District Court for the District of New Jersey.

**"Effective Date"** means the first Business Day after the entry of the Confirmation order, provided all conditions to the Effective Date have been satisfied or, if permitted, waived by the Debtors and Plan Co-Proponent, and on which no stay of the Confirmation Order shall be pending.

**"Equity Interest"** means any equity interest or proxy related thereto, direct or indirect, in AHS Realty LLC or any entity owned by Robert H. Sickles, and represented by duly authorized, validly issued, and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, direct or indirect,

inchoate or otherwise, in AHS Realty LLC or any entity owned by Robert H. Sickles, or right to convert into such an equity interest or acquire any equity interest, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

**"Estate"** means the estate of each Debtor as created under section 541 of the Bankruptcy Code.

**"Exhibit Filing Date"** means the last date by which forms of the exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be not later than __ days prior to the date of commencement of the Confirmation Hearing.

**"Final Order"** means an order as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or motion for re-argument or rehearing shall have expired.

**"General Unsecured Claim"** means a Claim that is included in Class AH 3 or RS 8.

**"General Unsecured Claims Cash Distribution"** means an amount of no less than **[$50,000**] in Cash that shall be distributed to holders of Allowed General Unsecured Claims, the funds for which shall be maintained in the General Unsecured Claims Cash Distribution Account.

**"General Unsecured Claims Cash Distribution Account"** means a segregated account established and funded by Newco on the Effective Date solely for the purposes of holding and maintaining the General Unsecured Claims Cash Distribution.

**"Impaired"** means any Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Lien"** means any charge against, security interest in, encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

**"Litigation Claim"** means any prepetition Claim against the Debtors relating to arbitrations, mediations, lawsuits, and other prosecutions.

**"Newco"** means collectively any new entity formed to directly or indirectly acquire the assets or equity of the Debtors.

**"Northfield"** means Northfield Bank or any subsequent holder of the Northfield Claim.

**"Northfield Claim"** means all of Northfield's Claims on account of the Northfield Loans, which amount was $5,230,466.88 as of August 9, 2024 *plus* accrued and accruing fees and interest as provided for under the Northfield Credit Agreement.

**"Northfield Credit Agreement"** means, collectively, those certain Credit Agreements pursuant to which any Debtor is borrower or obligee and Northfield are party thereto, as amended, modified, or supplemented from time to time.

**"Northfield Loans"** means the loans in the outstanding aggregate amount, as of the Petition Date under the Northfield Credit Agreement.

**"Person"** means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

**"Petition Date"** means May 9, 2024, the date upon which the Chapter 11 petitions of each of the Debtors were filed with the Bankruptcy Court.

**"Plan"** means this reorganization plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits, appendices, and schedules hereto to be filed with the Plan Supplement, as such may be altered, amended, or otherwise modified from time to time.

**"Plan Administrator"** has the meaning ascribed in Article 5.12 of this Plan.

**"Plan Consideration"** means the AHS Plan Consideration and the RS Plan Consideration.

**"Plan Co-Proponent"** means 1663 Partners, LLC or an affiliate thereof.

**"Plan Funding"** means the funds the Plan Co-Proponent shall pay to the Plan Administrator to hold in trust solely for purposes of making distributions provided for under the Plan.

**"Plan Proponents"** means the Debtors and the Plan Co-Proponent.

**"Plan Support Agreement"** means that certain Plan Support Agreement, dated as of November 22, 2024, by and among the Debtors, the Plan Co-Proponent, and certain other identified therein (as may be amended, supplemented, or modified in accordance with its terms).

**"Prepetition Claim"** means any Claim arising prior to the Petition Date.

**"Priority Claim"** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

**"Priority Tax Claim"** means any Claim entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Professional Fee Claim"** means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Cases incurred on or after the Petition Date and prior to the Effective Date that is allowed by the Court.

**"Professionals"** means the law firm of Genova Burns, whose retention in the Chapter 11 Cases has been approved by the Bankruptcy Court.

**"Reorganized Debtor"** means Robert H. Sickles, on and after the Effective Date.

**"Revested Assets"** means Robert H. Sickles' personal effects located at his Residence (as defined in the Plan Support Agreement), any entitlement to income tax refunds and the assets listed on Exhibit __ to the Disclosure Statement.

**"RS Plan Consideration"** means all the assets owned by Robert H. Sickles prior to the Effective Date except for the Revested Assets or, at Newco's election in the case of Robert H. Sickles's ownership interest of a legal entity, the underlying assets of such legal entity.

**"Schedules"** means, unless otherwise specified, the respective schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

**"Secured Claim"** means any Claim that is secured by a Lien on any Asset of the Debtors, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

"**Severance Claim**" means a Claim held by any current or former employee of Sickles Market, LLC, Sickles Provisions or TST on account of severance obligations that may have accrued prior to the Petition Date.

**"Subordinated Claims"** means a Claim subject to subordination under section 510(b) of the Bankruptcy Code.

"**Substantial Contribution Claims**" means 1663's Allowed Administrative Claim, if any, which 1663 may request for its substantial contribution to these Chapter 11 Cases, which award will be subordinate to all other administrative claims.

**"Tax Code"** means the Internal Revenue Code of 1986, as amended from time to time.

**"Unimpaired"** means any Class of Claims that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**"US Trustee"** means the office of the United States Trustee for Region 3.

**"US Trustee Fees"** means all fees and charges assessed against the Estate by the US Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Wage Claims**" means a Claim held by any current or former employee of Robert H. Sickles or Sickles Market, LLC on account of unpaid wages accrued prior to the Petition Date but excluding Severance Claims.

**Section 1.02 – Other Terms**.  Any capitalized term used in the Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Section 1.03 – Rules of Construction**. The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar words refer to the Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in Article I are and shall be regarded as integral, substantive, and operative provisions of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the

Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to all of the provisions of the Plan.

**Section 1.04 – Exhibits, Supplements, Appendices, and Schedules**. All exhibits, supplements, appendices, and schedules to the Plan, including those filed with the Plan Supplement, are incorporated into and are a part of the Plan as if set forth herein. To the extent that any exhibit, schedule, or Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**Section 1.05 – Controlling Document**. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of the Plan and shall control and take precedence.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**Section 2.01 – Administrative Claims**

(a) <u>General</u>. Subject to the Bar Date and other provisions herein and except to the extent Newco, or the Plan Administrator, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid from the funds in the Administrative Claims Fund.

**Section 2.02 – Administrative Claim Bar Date**.

(a) <u>General Administrative Claim Bar Date Provisions</u>. Except as provided below for (a) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (b) US Trustee Fees, requests for payment of Administrative Claims must be filed no later than 30 days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by Order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b) <u>US Trustee Fees</u>. The Debtors, Newco, or Plan Administrator (as applicable) shall pay all US Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Cases.

**Section 2.03 – Priority Tax Claims**. Except to the extent the Debtors or Newco, as applicable, and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, Newco or Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax

7

Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**Section 3.01** – **General Notes on Classification and Treatment of Classified Claims and Equity Interests**. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests (other than Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code, which Claims do not require classification pursuant to section 1123(a) of the Bankruptcy Code and are receiving the treatment set forth in Article II) are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

**Section 3.02** – **Special Provision Governing Unimpaired Claims**. Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors, the Reorganized Debtor, or the Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**Section 3.03** – **Classification and Treatment of Classified Claims Against and Equity Interests of AHS Realty, LLC**

| Class | Treatment | Entitled to Vote |
|---|---|---|
| Class AHS 1 –Priority Claims | Unimpaired | No (Deemed to accept) |
| Class AHS 2 – Northfield Claim | Unimpaired | No (Deemed to accept) |
| Class AHS 3 – General Unsecured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class AHS 4– Equity Interests | Impaired | No (Deemed to reject) |

(a) **Class AHS 1: Priority Claims**

i. Class AHS 1 Treatment. Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Claim, at the sole option of the Plan Administrator, each holder of an Allowed Priority Claim shall receive: (A) Cash in an amount equal to the amount of such Allowed Priority Claim from the Administrative Claims Fund on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable, (B) such other treatment so as to render such holder's Allowed Priority Claim Unimpaired.

ii. Class AHS 1 Voting. Holders of Allowed Priority Claims in Class AHS 1 are not Impaired under the Plan. Each holder of an Allowed Priority Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(b) **Class AHS 2: Northfield Claim**

   i. <u>Class AHS 2 Treatment</u>. The holder of the AHS Class 2 Claim, to the extent the holder is Northfield, shall be paid 100% of the Northfield Allowed Claim on the Effective Date in full and final satisfaction of such Claim.

   ii. <u>Class AHS 2 Voting</u>. Deemed to Accept.

(c) **Class AHS 3: General Unsecured Claims**

   i. <u>Class AHS 3 Treatment</u>. Provided that the holder of an AHS Class 3 Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in AHS Class3 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall receive its pro rata share of the General Unsecured Claims Cash Distribution.

   ii. <u>Class AHS 3 Voting</u>. Class AHS 3 is Impaired under the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(d) **Class AHS 4: Equity Interests**

   i. <u>Class AHS 4 Treatment</u>. On the Effective Date, Equity Interests shall be deemed cancelled, and the holders of Equity Interests shall not receive or retain any property under the Plan on account of such Interests.

   ii. <u>Class AHS 4 Voting</u>. Equity Interests are Impaired under the Plan, and the holders of Equity Interests are conclusively deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Equity Interests.

**Section 3.04 – Classification and Treatment of Classified Claims Against Robert H. Sickles.**

| Class | Treatment | Entitled to Vote |
|---|---|---|
| Class RS 1 – Priority Claims | Unimpaired | No (Deemed to accept) |
| Class RS 2 – Northfield Claim | Unimpaired | No (Deemed to accept) |
| Class RS 3 – State of NJ Department of Taxation Claims | Unimpaired | No (Deemed to accept) |
| Class RS 4 – Bluestone (aka BCC) Claim | Impaired | Yes (Entitled to vote to accept or reject) |
| Class RS 6 – Employee Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class RS 7 – General Unsecured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class RS 8 – Subordinated Claims | Impaired | No (Deemed to reject) |

(a) **Class RS 1: Priority Claims**

    i.   <u>Class RS 1 Treatment</u>. Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Claim, at the sole option of the Plan Administrator, each holder of an Allowed Priority Claim shall receive: (A) Cash in an amount equal to the amount of such Allowed Priority Claim from the Administrative Claims Fund on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable, (B) such other treatment so as to render such holder's Allowed Priority Claim Unimpaired.

    ii.   <u>Class RS 1 Voting.</u> Holders of Allowed Priority Claims in Class 1 are not Impaired under the Plan. Each holder of an Allowed Priority Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(b) **Class RS 2: Northfield Claim**

    i.   <u>Class RS 2 Treatment</u>. The holder of the RS Class 2 Claim, to the extent the holder is Northfield, shall be paid 100% of the Northfield Allowed Claim on the Effective Date in full and final satisfaction of such Claim.

    <u>Class RS 2 Voting</u>. Deemed to Accept.

(c) **Class RS 3: State of New Jersey Department of Taxation Claims**

    i.   <u>Class RS 3 Allowance</u>. All Allowed Claims filed by the State of New Jersey other than those related to unpaid wages, which are treated as Class RS 7 Claims, are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of $848,326.

    ii.   <u>Class RS 3 Treatment</u>. The holders of Allowed Class RS 3 Claims shall receive, in full and final satisfaction of such Claim payment in full of all such Allowed Claims.

    iii.   <u>Class RS 3 Voting</u>. Class RS 3 is not Impaired under the Plan and the holder of an Allowed RS 3 Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(d) **Class RS 4: Bluestone Claim**

    i.   <u>Class RS 4 Allowance</u>. The Bluestone Claim in Class RS 4 is Allowed as follows:

        a.   The Bluestone Claim shall be allowed in the amount of $575,000 if Bluestone receives its distribution on or before February 1, 2025;

        b.   The Bluestone Claim shall be allowed in the amount of $585,000 if Bluestone receives its distribution on or after February 2, 2025, but before March 1, 2025.

    ii.   <u>Class RS 4Treatment</u>. The holder of the Class RS 4 Bluestone Claim shall receive the above treatment in full and final satisfaction of such Claim.

    iii.  <u>Class RS 4 Voting</u>. Class RS 4 is Impaired under the Plan. The holder of the Bluestone Claim is entitled to vote to accept or reject the Plan.

(e) **Class RS 6: Employee Claims**

    i.  <u>Class RS 6 Treatment.</u> Provided that the holder of a Class RS 6 Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in Class RS 6 that were Disputed Claims on the Effective Date and have thereafter become Allowed Class RS 6 Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed RS 6 Claims, or as soon thereafter as is practicable, holders of each such Allowed RS 6 Claim shall receive 100% of its Allowed Wage Claim and two(2) week's pay in full satisfaction of any and all statutory or common law right to severance. Resolution of the severance claims hereunder shall be deemed a settlement Pursuant to Federal Bankruptcy Rule 9019.

    ii.  <u>Class RS 6 Voting.</u> Class RS 6 is Impaired under the Plan. Each holder of an Allowed Class RS 6 is entitled to vote to accept or reject the Plan.

(f) **Class RS 7: General Unsecured Claims**

    i.  <u>Class RS-7 Treatment</u>. Provided that the holder of a Class RS 7 Claim has not yet been paid, on the later of (A) the Effective Date and (B) for Claims in Class RS 7 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall receive its pro rata share of the General Unsecured Claims Cash Distribution.

    ii.  <u>Class RS 7 Voting</u>. Class RS 7 is Impaired under the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(g) **Class RS 8: Subordinated Claims**

    i.  <u>Class RS 8 Treatment</u>. On the Effective Date, the holders of Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

    ii.  <u>Class RS 8 Voting</u>. Subordinated Claims are Impaired under the Plan, and the holders of Subordinated Claims are conclusively deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan in their capacity as a holder of such Subordinated Claims.

**ARTICLE IV**
**VOTING AND DISTRIBUTIONS UNDER THE PLAN**

**Section 4.01 – Voting of Claims and Interests**. Holders of Allowed Claims against AHS Realty, LLC and Holders of Allowed Claims against Robert H. Sickles shall vote separately on the basis that the Plan shall apply as a separate Plan for each of the Debtors. Unimpaired Classes are presumed to have accepted the Plan. All classes of Claims are permitted to object to the Plan or the adequacy of the Disclosure Statement. Objections to the Plan and to the adequacy of the Disclosure Statement must be filed no later than January 9, 2024, at 4:00 p.m. (Eastern Time), or such time and date as scheduled by the Court.

**Section 4.02 – Elimination of Vacant Classes**. Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant section 1129(a)(8) of the Bankruptcy Code.

**Section 4.03 – Distributions Under the Plan**. Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day and deemed to have been made on the date due. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of Distributions under the Plan. the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

**Section 4.04 – Distribution Deadlines**. Any Distribution to be made by the Plan Administrator pursuant to the Plan shall be deemed to have been timely made if made within 30 days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein.

**Section 4.05 – Manner of Payment Under the Plan**. Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Plan Administrator shall be made by check drawn on a domestic bank or by automated clearinghouse transfer.

**Section 4.06 – De Minimis Distributions**. The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator on or before 60 days after the later of the Effective Date or the date on which the claim becomes an Allowed Claim. Any de minimis Distributions not subject to a timely request for payment shall revert to Newco.

**Section 4.07 – Unclaimed Property**. All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Plan Administrator, as applicable, has been notified in writing of a change of address. If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to Newco unless the Plan Administrator projects a shortfall in the funding of their expenses, in which case any unclaimed funds will be paid to the Plan Administrator, to the extent necessary to fully fund projected expenses. Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

**Section 4.08 – Time Bar to Cash Payments**. Checks issued by the Plan Administrator in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued. Any such written claim in respect of such a voided check must be received by the Plan Administrator on or before 60 days after the expiration of the 60-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to Newco. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtors, the Estate, Newco, or the Plan Administrator.

## ARTICLE V
## IMPLEMENTATION OF PLAN

**Section 5.01 – Implementation**. The Plan Administrator will implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator or Newco, as applicable, may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.02 – No Substantive Consolidation for Plan Purposes**. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth in Article __ shall apply separately to each of the Debtors.

**Section 5.04 – Restructuring Transactions**. On the Effective Date, or as soon as reasonably practicable thereafter, Newco and the Plan Administrator may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**Section 5.05 – Cancellation of Liens**. Except as otherwise specifically provided herein, upon the payment of a Secured Claim in accordance with the Plan, any Lien securing such Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such holder and to take such actions as may be requested by Newco, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by Newco.

**Section 5.06 – Establishment of Reserves**. At least  three days prior to the Confirmation Hearing, the Debtors shall file with the Bankruptcy Court a notice that reflects the proposed amounts of the Administrative Claims Fund and the Disputed Claims Reserve Account.

**Section 5.07 – Vesting of Assets in Newco; Revesting of Assets**. As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, the Plan Consideration shall vest in Newco and the Revested Assets shall vest in the Reorganized Debtor, in each case free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order.

**Section 5.08 – General Settlement of Claims**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan.

**Section 5.09 – Plan Funding**. On the Effective Date, the Plan Administrator will receive the Plan Funding from the Plan Co-Proponent and, in exchange, the Plan Co-Proponent will receive the Plan Consideration. The Plan Funding shall be used to make distributions as provided in the Plan and to fund other distributions, costs, and expenses contemplated by the Plan, including all projected fees to be owed to the Office of the United States Trustee.

**Section 5.10– Notice of Effective Date**. Not later than seven Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**Section 5.11**– **Corporate Action**. The Plan will be administered by the Plan Administrator and all actions taken under the Plan in the name of the Debtors shall be taken through the Plan Administrator.

**Section 5.12** – **Appointment of the Plan Administrator**. The Plan Administrator shall be selected by the Plan Co-Proponent. The Plan Administrator shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code. The Plan Administrator's fees for its services and expenses shall be paid from an initial flat fee funding by the Plan Co-Proponent of $50,000 plus the proceeds of Causes of Action, if any, other than Avoidance Action.

**Section 5.13** – **Powers and Duties of the Plan Administrator**. The Plan Administrator will act for the Debtors in a fiduciary capacity as applicable to a board of directors or trustees, subject to the provisions of the Plan. The powers and duties of the Plan Administrator shall include, without limitation:

(a)  investing Cash in accordance with Bankruptcy Code §345, and withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtors or incurred by the Plan Administrator from the Administrative Claims Fund in accordance with the Plan;

(b)  engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)  executing and delivering all documents and taking all actions necessary to consummate the Plan and wind down the Debtors' business;

(d)  coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

(e)  coordinating the collection of outstanding accounts receivable;

(f)  coordinating the storage and maintenance of the Debtors' books and records;

(g)  overseeing compliance with the Debtors' accounting, finance, and reporting obligations;

(h)  preparing financial statements and US Trustee post-confirmation quarterly reports, until such time as a final decree has been entered;

(i)  overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(j)  performing any additional corporate actions as necessary to carry out the wind-down of the Debtors;

(k)  paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Debtors and the Plan Administrator and paying all other expenses for winding down the affairs of the Debtors, subject to the terms of the Plan;

(l)  objecting to, compromising, and settling Claims;

(m) acting on behalf of the Debtors in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain,

enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtors' Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(n)  implementing and/or enforcing all provisions of the Plan; and

(o)  such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**Section 5.14 – Distributions to Holders of Claims and Equity Interests**.

(a)  **Estimation of Claims**. The Plan Administrator may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtors may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

(b)  **No Recourse**. Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

(c)  **Automatic Disallowance and Expungement of Certain Claims**. On the Effective Date, all scheduled claims listed as disputed for which no timely proof of claim was filed and all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

(d)  **General Unsecured Claims Cash Distribution Account**. On the Effective Date, the Plan Co-Proponent shall fund the General Unsecured Claims Cash Distribution Account. Any and all funds in the General Unsecured Claims Cash Distribution Account shall constitute neither the property of the Reorganized Debtor nor Newco. After the Effective Date, neither the Reorganized Debtor nor Newco shall have any obligation to provide additional funding to the General Unsecured Claims Cash Distribution Account.

(e)  **Distribution to Holders of Allowed General Unsecured Claims**. As soon as practical after  the Effective Date, the Plan Administrator shall distribute to each Holder of an Allowed General Unsecured Claim its pro rata share of (i) the General Unsecured Claims Cash Distribution less (ii) the Disputed Claims Reserve. Upon the completion of the Claims reconciliation process in accordance with the procedures set forth in the Plan, the Plan Administrator shall distribute the Disputed Claims Reserve to the holders of Allowed General Unsecured Claims such that, after giving effect to such distribution, each Holder of an Allowed General Unsecured Claim shall have received its Pro Rata share of the General Unsecured Claims Cash Distribution. Any Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall (i) receive no more from the Disputed Claims Reserve than the amount reserved with respect to such Claim ; and (ii) not have recourse to the Debtors, Newco, or any property transferred pursuant to the Plan (other than the General Unsecured Claims Cash Distribution and the Disputed Claims Reserve).

**Section 5.15 – Disputed Claims Reserve Account**.

(a)  **Objections to Claims**. Notwithstanding any other provision of the Bankruptcy Code and unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 60 days after the Effective Date, (ii) 30 days after a request for payment or proof of claim is timely filed and properly served upon the Plan Administrator, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator effects service in any of the following manners (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of Claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim or Cause of Action pursuant to the terms of the Plan without further order of the Bankruptcy Court.

(b)  **Resolution of Disputed Claims**. No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(c) **Establishment of Disputed Claims Reserve Account**. On or before the Effective Date, the Debtor shall establish and fund the Disputed Claims Reserve Account, which shall be administered by the Plan Administrator.

(d) **Duties in Connection with Disputed Claims**. The Plan Administrator shall (i) deposit in the Disputed Claims Account, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date (ii) object to, settle, or otherwise resolve Disputed Claims, (iii) make Distributions to holders of Disputed Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the Disputed Claims Reserve Account, after resolving all Disputed Claims, to Newco in accordance with the Plan.

(e) **Distributions when Disputed Claim Is Resolved**. On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the Plan Administrator shall distribute to the holder of such Claim from the Disputed Claims Reserve Account any amounts attributable to such Claim, in accordance with the Plan. Any Cash Distributions held in the Disputed Claims Reserve Account for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall revert to Newco.

**Section 5.16 – Miscellaneous Distribution Provisions**.

(a) **Method of Cash Distributions**. All Distributions shall be made by the Plan Administrator or a duly appointed disbursing agent appointed by and acting under the Plan Administrator's supervision to the holders of Allowed Claims. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator; provided, however, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Plan Administrator in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b) **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

(c) **Minimum Cash Distributions**. The Plan Administrator shall not be required to make any distribution of Cash less than $50 to any holder of an Allowed Claim.

**Section 5.17 – Allocation of Payments**. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims but remains unpaid.

**Section 5.18 – Setoffs**. The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtor, or the Plan Administrator, as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtor, or the Plan Administrator of any such claims,

rights, and Causes of Action the Debtors, the Reorganized Debtor, or the Plan Administrator, as applicable, may have against such holder.

**Section 5.19 – Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, or any other disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

**Section 5.20 – Record Date for Distributions to Holders of Claims**. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distributions under the Plan. The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date for purposes of the Distributions.

**Section 5.21 – Disputed Payments**. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtors or the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Section 5.22 – Withholding Taxes**. The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions may be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Plan Administrator will issue an IRS Form 1099.

**Section 5.23 – Request for Expedited Determination of Taxes**. Newco, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date**.**

**Section 5.24 – Resignation or Removal of Plan Administrator**. If the Plan Administrator resigns or is removed, dies, dissolves, or is incapacitated, the Bankruptcy Court shall designate another Person to become the Plan Administrator and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the compensation of the successor Plan Administrator. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**Section 5.25 – No Agency Relationship**. The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been

18

signed or presented by the proper party or parties. The Plan Administrator may rely upon information previously generated by the Debtors and such additional information provided to him or her by former employees of the Debtors.

## ARTICLE VI
## EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION

**Section 6.01** – **Binding Effect**. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtors who held such Claim or interest at any time during the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 6.02** – **Term of Injunctions or Stays**. Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

**Section 6.03** – **Retention of Rights and Causes of Action**. Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had prior to the Effective Date against any Person on behalf of the Estate or of the Debtors in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law are preserved for Newco and the Plan Administrator. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Plan Administrator and Newco shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtors that arose before or after the Petition Date. The Plan Administrator and Newco have, retain, reserve, and shall be entitled to assert and pursue all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtors not expressly released under the Plan may be asserted after the Effective Date. Newco or the Plan Administrator, as applicable, may abandon, settle, or release any or all such claims, rights or Causes of Action, as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, or Cause of Action, the Plan Administrator, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. Notwithstanding the foregoing, the Debtors shall not retain any Claims or Causes of Action released pursuant to sections 6.05, 6.06, or 6.07 of the Plan against the Debtor's professionals, the Co-Proponent, or the Co Proponent's  professionals, or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

**Section 6.04** – **[intentionally omitted]**

**Section 6.05** – **Injunction.**

(a) **Satisfaction of Claims**. The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

19

(b) **Scope of Injunction. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's professionals, the Co-Proponent, and the Co Proponent's professionals,, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Cases are closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtors. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.**

(c) **Release of Collateral**. Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to Newco any and all property that secures or purportedly secures such Claim; and (2) execute such documents and instruments as the Plan Administrator or Reorganized Debtor requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to Newco, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of Liens. Any such holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

(d) **Cause of Action Injunction. On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan.**

**Section 6.06 – Exculpation**. Except as otherwise set forth in the Plan, neither the Debtors, nor any Released Party, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Cases or the

operations, monitoring, or administration of the Debtors during the Chapter 11 Cases, and the Plan Administrator shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (a) intentional fraud, gross negligence, or willful misconduct, and (b) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct.

**Section 6.07** – **Preservation and Application of Insurance**. The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

**Section 6.08** – **Compromise of Controversies**. Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all severance claims and  all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

**Section 6.09** – **Solicitation of Plan**. As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**Section 6.10** – **Post-Confirmation Activity**. As of the Effective Date, the Plan Administrator may implement the Plan without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

**Section 6.11** – **Avoidance Actions.** On the Effective Date, the Debtors shall be deemed to release any and all rights, claims, and causes of action that a trustee, debtor in possession, or other appropriate party in interest would be able to assert on behalf of the Debtors under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 506 and 542 through 551 (collectively, "**Avoidance Actions**") .

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01 – Executory Contract and Unexpired Leases**. To the extent not previously rejected or listed on the schedule of rejected executory contracts and unexpired leases filed with the Plan Supplement, on the Confirmation Date, but subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned during the Chapter 11 Cases, shall be deemed rejected by the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code.

**Section 7.02 – Rejection Damages Bar Date**. If rejection, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, Newco or its property or the Plan Administrator unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Administrator not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Any such Claim, to the extent Allowed, shall be classified as a General Unsecured Claim.

**Section 7.03 – Notice and Determination of Cure Disputes and Deemed Consent**.

(a)  Any monetary amounts by which any executory contract or unexpired lease to be assumed or assumed and assigned, as applicable, herein is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Newco promptly upon assumption thereof. At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts and unexpired leases to be assumed or assumed and assigned, as applicable, reflecting the Debtors' intention to assume or assume, and assign, as applicable, the contract or unexpired lease in connection with the Plan and setting forth the proposed cure amount (if any). If a counterparty to any executory contract or unexpired lease does not receive such a notice, the proposed cure amount for such contract or lease shall be deemed to be zero dollars ($0).

(b)  Disputes pertaining to the assumption or assumption and assignment of an executory contract or unexpired lease shall be heard by the Bankruptcy Court prior to such assumption and assignment being effective; provided, however, before the Effective Date, Newco, as applicable, may settle any dispute regarding a cure amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)  Any counterparty to any executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption or assignment, as applicable, of such contract or lease or the relevant cure amount within ten (10) days of the service thereof, (i) shall be deemed to have assented to (A) such cure amount, (B) assumption or assumption and assignment, as applicable, of the applicable contract or lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or Newco or terminating or modifying such contract or lease on account of the transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of the cure amount.

(d)  If there is a cure dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, Newco shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease by filing a notice indicating such altered treatment.

**Section 7.04 – Payments Related to Assumption or Assignment of Contracts and Leases**. Subject to resolution of any cure dispute, all cures shall be satisfied by Newco, upon assumption or assumption and assignment, as applicable, of the underlying contracts and unexpired leases. Assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the cure amount, whether monetary or nonmonetary, including defaults of provisions relating to change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any proofs of claim filed with respect to any executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

**Section 7.05 – Effect of Post-Confirmation Rejection**. The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

**ARTICLE VIII**
**CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE**

**Section 8.01 – Conditions to Confirmation**. The Plan may not be confirmed unless each of the conditions set forth below is satisfied:

(a)  The Confirmation Order is entered in a form reasonably acceptable to the Plan Co-Proponent and Northfield.

(b)  The Plan Support Agreement is not terminated.

**Section 8.02 – Conditions to Occurrence of Effective Date**. The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Co-Proponent with the consent of the Debtors:

(a)  The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order and shall not have been stayed, modified, or vacated on appeal.

(b)  The Confirmation Order shall provide for the releases, injunctions, and exculpation of the Persons provided for by the Plan.

(c)  The Plan Administrator shall have been appointed and shall have accepted to act in such in accordance with the terms and conditions of the Plan.

(d)  All conditions precedent to the effectiveness of the Plan Funding shall have been satisfied or waived in accordance with the terms thereof.

23

(e)  All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

(f)  All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**Section 8.03 – Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date**. If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after 60 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors or of any other party in interest.

**Section 8.04 – Closing of the Chapter 11 Cases**. On the Effective Date, pursuant to the Confirmation Order, the AHS Case shall be closed. Any Claims against AHS that are not satisfied in accordance with this Plan on the Effective Date shall be treated as Claims against Robert H. Sickles and shall be administered by the Plan Administrator in the Chapter 11 Case of Robert H. Sickles in accordance with this Plan. Until entry of a final decree closing the Chapter 11 Cases, the closing of the Chapter 11 Case of AHS Realty LLC pursuant to the Confirmation Order shall be for procedural purposes and for purposes of calculating fees payable under 28 U.S.C. § 1930 only and shall not prejudice the rights of any creditor with respect to such Debtor or its estate. After all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and have been satisfied in accordance with the Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IX
## CONFIRMABILITY AND SEVERABILITY OF THE PLAN

**Section 9.01**. The Plan Co-Proponent, but only with Debtors' consent, reserves the right to alter, amend, modify, revoke, or withdraw the Plan; provided, however, that the Plan Co-Proponent may revoke or withdraw the Plan as permitted under the Plan Support Agreement. If the Plan Co-Proponent revokes or withdraws from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, or to prejudice in any manner the rights of the Plan Co-Proponent or any persons in any further proceedings involving the Plan Co-Proponent. A determination by the Bankruptcy Court that the Plan, as it applies to the Debtors, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Plan Co-Proponent's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given

effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

**Section 9.02**. The Debtors and the Plan Co-Proponent hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code to the extent it cannot confirm the Plan under section 1129(a).

**ARTICLE X**
**ADMINISTRATIVE PROVISIONS**

**Section 10.01 – Retention of Jurisdiction.**  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)  to determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)  to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, estimation, or payment of Claims and cure disputes resulting therefrom;

(c)  to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(d)  to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)  to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f)  to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)  to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;

(h)  to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)  to hear and determine all Professional Fee Claims;

(j)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

25

(k) to take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(l) to take any action and issue such Orders as may be necessary to construe, enforce, or implement the Plan Funding;

(m) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o) to enter a final decree closing the Chapter 11 Cases;

(p) to recover all assets of the Debtors and property of the Estate, wherever located;

(q) to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(r) to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

(s) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Section 10.02 – Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Section 10.03 – Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New Jersey shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New Jersey.

**Section 10.04 – Effectuating Documents and Further Transactions**. Newco or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 10.05 – Waiver of Bankruptcy Rule 3020(e)**. The Debtors and the Plan Co-Proponent shall request the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order and the Plan be immediately binding and enforceable, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**Section 10.06 – No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**Section 10.07 – Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on

the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

**Section 10.08 – Disposal of Books and Records**. The Debtors' and the Plan Administrator's rights to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

**Section 10.09 – Amendments**

(a) **Pre-Confirmation Amendment**. The Plan Co-Proponent, with the Debtors' consent, not to be reasonably withheld, may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

(b) **Post-Confirmation Amendment Not Requiring Re-solicitation**. After the entry of the Confirmation Order, the Plan Co-Proponent, with the Debtors' consent, not to be reasonably withheld, may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Plan Co-Proponent obtains approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

(c) **Post-Confirmation Amendment Requiring Re-solicitation**. After the Confirmation Date and before the Effective Date of the Plan, the Plan Co-Proponent, with the Debtors' consent, not to be reasonably withheld, may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Plan Co-Proponent obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Co-Proponent complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

**Section 10.10 – Successors and Assigns**. The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Section 10.11 – Confirmation Order and Plan Control**. To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or, after confirmation, any other agreement entered into between the Debtors and any third party, the Plan shall control over the Disclosure Statement and over any previous agreements, and the Confirmation Order shall control over the Plan; for clarity, prior to entry of the Confirmation Order, the Plan Support Agreement shall control over the Plan.

**Section 10.12 – Notices**. Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

Donald W. Clarke
GENOVA BURNS LLC
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone: (973) 467-2700
*Counsel for Robert H. Sickles and AHS
Realty, LLC*

Jonathan Friedland
MUCH SHELIST P.C.
jfriedland@muchlaw.com
(o) 312.521.2624
(c) 224.436.5142
*Counsel for 1663 Partners, LLC*

**Section 10.13 – Substantial Consummation**. The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code upon the earliest of (a) issuance by the Plan Administrator of the first distributions under this Plan and (b) 10 days after the entry of the order confirming the Plan.

**Section 10.14 – Deemed Acts**. Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**ROBERT H. SICKLES**
**AHS REALTY, LLC**

BY: /s/ Robert H. Sickles _____
**ROBERT H. SICKLES**
*Individually, and as*
*Managing Member of AHS Realty, LLC*
*Plan Proponent*

**1663 PARTNERS, LLC**

BY: /s/ Jennifer Griffin Karp _____
**JENNIFER GRIFFIN KARP**
*Co-Managing Partner*
*Plan Co-Proponent*