**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**GENOVA BURNS LLC**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone:  (973) 467-2700
*Counsel for Robert Sickles*
**DANIEL M. STOLZ, ESQ.**
**JEFFREY R. RICH, ESQ.**
**DONALD W. CLARKE, ESQ.**
**JACLYNN N. McDONNELL, ESQ.**
dstolz@genovaburns.com
jrich@genovaburns.com
dclarke@genovaburns.com
jmcdonnell@genovaburns.com

Order Filed on April 10, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| In re: | Case No.:  24-14781 (Jointly Administered) |
|---|---|
| **ROBERT H. SICKLES**, *et al.[1]*, | Hon. Christine M. Gravelle |
| Debtor-in-Possession. | Chapter 11 |

**FINDINGS OF FACTS, CONCLUSIONS OF LAW, AND ORDER**
**(I) CONFIRMING SECOND AMENDED JOINT PLAN OF REORGANIZATION OF**
**ROBERT H. SICKLES AND AHS REALTY LLC PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) APPROVING THE RELATED**
**DISCLOSURE STATEMENT ON A FINAL BASIS**

DATED: April 10, 2025

Honorable Christine M. Gravelle
United States Bankruptcy Judge

---

[1] Robert H. Sickles' case is jointly administered with the case of AHS Realty LLC (24-14779).

15125916

1

2
The above-captioned debtors and debtors-in-possession (the "**Debtors**") and 1663 Partners, LLC

3
(the "**Co-Proponent**," together with the Debtors, the "**Proponents**") having proposed the

4
*Second Amended Joint Chapter 11 Plan of Reorganization* [Dkt. 147] (together with all exhibits

5
thereto, the "**Plan**");[2] the Court having conducted a hearing to consider confirmation of the Plan

6
on April 1, 2025 (the "**Confirmation Hearing**") with appearances as noted on the record; and

7
the U.S. Trustee having filed an objection to confirmation [Dkt. 192]; and the Court having

8
considered the pleadings and evidence submitted in connection with confirmation of the Plan,

9

10
and the arguments of counsel at the Confirmation Hearing,

11

12
    *IT IS HEREBY FOUND AND DETERMINED THAT:*

13

14
    A.    <u>Findings and Conclusions</u>. The findings of fact and conclusions of law set forth

15
herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and

16
conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable herein by

17
Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute

18
conclusions of law, they are adopted as such. To the extent any of the following conclusions of

19
law constitute findings of fact, they are adopted as such.

20
    B.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over these bankruptcy cases

21
pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §

22
157(b).  Venue is proper before the Court and in this District pursuant to 28 U.S.C. §§ 1408 and

23
1409.

24
    C.    <u>Burden of Proof</u>. The Debtors have met their burden of proving the elements of

25
sections 1129(a) and (b) of the Bankruptcy Code necessary to confirm the Plan by a

26
preponderance of the evidence.

27
_____

28
    [2] Capitalized terms used and not defined herein have the meaning ascribed in the Plan.

15125916

D.    <u>Notice and Service</u>. The *Certification of Ballots* [Dkt. 212] (the "**Voting Declaration**") and the certificates of service with respect to the Disclosure Statement and Plan solicitation materials [Dkt. No. 156] (the "**Solicitation Certification**"), and the other proofs of service in respect to related materials establish the transmittal and service of the Disclosure Statement, Plan and related solicitation materials and notices (including without limitation notice of all deadlines for objecting to, or voting to accept or reject, the Plan and of the proposed release, discharge, exculpation and injunction provisions of the Plan) have been properly transmitted and served in accordance with the Solicitation Procedures Order (defined below). Under the circumstances, such transmittal and service constitute due, adequate and sufficient notice of the Plan and the Confirmation Hearing to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required.

E.    <u>Solicitation</u>. The Proponents have solicited votes for acceptance and rejection of the Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, this Court's order (I) Conditionally Approving Second Amended Disclosure Statement, (II) Fixing Time for Filing Objections to the Second Amended Disclosure Statement and The Second Amended Plan, (III) Scheduling a Hearing on the Final Approval of the Second Amended Disclosure Statement and Confirmation of the Second Amended Plan, and (IV) For Other Relief the Court Deems Equitable and [Dkt. 148] (the "**Solicitation Procedures Order**"), subsequent orders entered related thereto, and all applicable Bankruptcy Code provisions, and all other applicable rules, laws, and regulations.    The Proponents are entitled to the protections of section 1125(e) of the Bankruptcy Code.

F.    <u>Voting</u>.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

G.    <u>Post-Solicitation Modifications.</u> The modifications to the Plan pursuant to this Order do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.

15125916

H.    <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the Debtors and Co-Proponent as proponents in accordance with Bankruptcy Rule 3016(a). The Disclosure Statement was conditionally approved by Solicitation Procedures Order that contains adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Proponents appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction provisions of the Plan and Disclosure Statement are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

I.    <u>Resolution of Objections</u>. Any dispositions or resolutions of objections to confirmation set forth on the record at the Confirmation Hearing are hereby incorporated by reference. All remaining unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, are overruled on the merits, with prejudice.

J.    <u>Section 1129(a)(1)</u>. The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with all applicable provisions of the Bankruptcy Code.

K.    <u>Section 1129(a)(2)</u>. The Proponents have complied with all applicable provisions of the Bankruptcy Code, including without limitation sections 1122, 1123, 1124, 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order, and other orders of the Court.

L.    <u>Section 1129(a)(3)</u>. The Plan has been proposed by the Proponents in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In making this determination, the Court has considered the circumstances and record of these cases and the process leading to the filing of the Plan and the Confirmation Hearing. The Plan is the result of extensive arm's length negotiations among the Debtors, the Co-Proponent, and other key stakeholders, and has received broad support from creditors. The Plan is proposed to successfully consummate these cases, provide prompt and meaningful distributions to creditors, effect a reorganization of the Debtor, Robert H. Sickels case, and the liquidation of the AHS Realty LLC case, and to maximize creditor recoveries on a fair and equitable basis, and accordingly is consistent with the objectives and purposes of the Bankruptcy Code.

15125916

M.     <u>Section 1129(a)(4)</u>. The payments made or to be made by the Debtors to professionals for services or costs in connection with the Plan or incident to the cases, either have been approved by or are subject to the approval of the Court as reasonable. Thus, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

N.     <u>Section 1129(a)(5)</u>. The identities and affiliations of the individual(s) that will serve as directors and officers of Newco after the Effective Date and the nature of compensation of any insiders have been adequately disclosed. The appointment of the directors and officers to such offices is consistent with the interests of creditors and with public policy inasmuch as all related objections, if any, were withdrawn or resolved prior to or at the Confirmation Hearing. As such, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

O.     <u>Section 1129(a)(6)</u>. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. As such, section 1129(a)(6) of the Bankruptcy Code is inapplicable in this Bankruptcy Case.

P.     <u>Section 1129(a)(7)</u>. Each holder of an impaired Claim or Interest that has not accepted the Plan will, on account of such Claim or Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor at issue was liquidated under chapter 7 of the Bankruptcy Code on such date. In making this determination, and after considering the arguments or evidence offered prior to or at the Confirmation Hearing, the Court finds that the liquidation analysis attached to the Disclosure Statement is reasonable, credible, and persuasive and utilizes reasonable and appropriate methodologies and assumptions. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

Q.     <u>Section 1129(a)(8)</u>. Classes AHS 1, AHS 2, RS 1, RS 2, and RS 3 are Unimpaired under the Plan and each is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes AHS 3, RS 4, RS 5, RS 6, and RS 7 have each voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. No Class has voted to reject the Plan. To the extent the Plan does not satisfy the requirements of section 1129(a)(8)

15125916

of the Bankruptcy Code, the Plan is confirmable because it satisfies the nonconsensual confirmation requirements pursuant to section 1129(b) of the Bankruptcy Code.

R.      Section 1129(a)(9).  The treatment of Administrative Claims and Priority Claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

S.      Section 1129(a)(10).  Numerous Classes are impaired and have voted to accept the Plan, determined without including any acceptance by any insider.  Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

T.      Section 1129(a)(11).  Confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of any Debtor or successor thereof, except as provided in the Plan. The evidence proffered or adduced by the Proponents at the Confirmation Hearing supports the feasibility of the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

U.      Section 1129(a)(12).  The Plan provides for the payment on the Effective Date of all fees required under 28 U.S.C. § 1930(a) and thereby satisfies section 1129(a)(12) of the Bankruptcy Code.

V.      Section 1129(a)(13)-(16).  The Debtors do not owe retiree benefits (as defined under section 1114 of the Bankruptcy Code), and accordingly, section 1129(a)(13) does not apply to the Plan.  Additionally, sections 1129(a)(14)-(16) of the Bankruptcy Code apply to individuals or nonprofit entities and are not applicable to the Bankruptcy Case.

W.      Section 1129(b). All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), are satisfied by the Plan. While certain Classes are deemed to have rejected the Plan (the "**Rejecting Classes**"), no holder of any Claim or Interest that is junior to the Claims or Interests in any Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Class is receiving or retaining property under the Plan with a value greater than the Allowed amount of Claims in such Class. Additionally, the Plan's classification scheme is appropriate as similarly situated Claims or Interests receive substantially similar treatment under the Plan and valid business, factual, and legal reasons exist for the separate classification and treatment of the Claims or Interests across

15125916

the various Classes established under the Plan. Therefore, the Plan does not discriminate unfairly, and is fair and equitable, with respect to each of the Rejecting Classes. Accordingly, the Plan satisfies the requirements of and may be confirmed under section 1129(b) of the Bankruptcy Code and may be confirmed.

X.     Section 1129(c). The Plan is the only plan that has been filed and not withdrawn in these cases, and accordingly the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

Y.     Section 1129(d). The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party in interest, including but not limited to any governmental unit, has requested that the Court deny confirmation of the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Z.     Section 1129(e). Section 1129(e) of the Bankruptcy Code is not applicable to these bankruptcy cases.

AA.     Securities. The offering, issuance, and distribution of any securities pursuant to the Plan to the extent necessary are subject to, or made in good faith and in reliance on, exemptions from section 5 of the Securities Act of 1933 and any state or local laws requiring registration or licensing for issuers, underwriters or brokers, pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, or any other applicable exemption under the Securities Act.

BB.     Executory Contracts and Unexpired Leases. With the exception of the Interim Equipment Lease Agreement between AHS and LS Market Newco LLC ("**Newco**") and the Interim Use and Occupancy Agreement between AHS and Newco, each dated in or about April 1, 2025 (collectively, the "**Operating Agreements**") and subject to the order [Dkt. #244] approved by this Court contemporaneously with this Order, the Plan provides for the rejection of all executory contracts or unexpired leases of the Debtors. The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code and satisfies the requirements of section 365 of the Bankruptcy Code

15125916

CC.    <u>Exculpation and Injunctions</u>. The exculpation and injunctions set forth in Article VI of the Plan (and as modified herein) are a narrowly tailored and material element of the settlements and transactions incorporated into and to be effectuated by the Plan; are explicitly and conspicuously called out in the Plan, are important to facilitate an overall resolution with respect to the Robert H. Sickels' reorganization among the parties in interest; and are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and all other applicable law. The injunctions are additionally necessary to implement, preserve, and enforce the discharge of Robert H. Sickels.

DD.    <u>Exculpation</u>. The exculpation set forth in Article VI of the Plan (and as modified herein) is an integral element of the Plan, has been proposed in good faith, is appropriately limited in scope, and includes a carve-out for fraud, gross negligence, and willful misconduct. The parties to be so exculpated have participated in good faith in formulating and negotiating the Plan and have substantially contributed thereto, and accordingly, such exculpation is reasonable and appropriate under the circumstances.

EE.    <u>Plan Conditions to Confirmation</u>. All conditions to confirmation set forth in Section 8.01 of the Plan have been satisfied or waived in accordance with its terms.

FF.    <u>Plan Conditions to Consummation</u>. Each of the conditions to the Effective Date under the Plan, as set forth in Article VIII therein, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

GG.    <u>Waiver of Stay</u>. Under the circumstances, good cause exists to waive the stay imposed by Bankruptcy Rule 3020(e).

***On the foregoing findings and conclusions and on the record at the Confirmation Hearing, and good cause appearing therefore,  IT IS HEREBY ORDERED THAT:***

1.    <u>Disclosure Statement</u>. The Disclosure Statement is approved as within the meaning of section 1125(a) of the Bankruptcy Code.

15125916

**2.** Confirmation. The Plan, as modified herein, including all exhibits thereto as modified on the record at the Confirmation Hearing, are hereby approved and confirmed pursuant to section 1129 of the Bankruptcy Code. All objections or reservations of rights pertaining to confirmation of the Plan that have not been withdrawn, waived, or otherwise resolved (including at the Confirmation Hearing) are hereby overruled on the merits and denied.

**3.** Implementation. The Co-Proponent (and its affiliates), the Debtors, and the Plan Administrator (Matthew Brash of Newport Advisors**)**, as appropriate, are hereby authorized to take all actions as necessary, appropriate, or desirable to enter into, implement, and consummate the transactions contemplated by the Plan and the contracts, instruments, exculpation, leases, agreements, or other documents created or executed in connection with the Plan Documents.[3]

**4.** Effective Date. The Effective Date of the Plan shall occur on the date, as determined by the Co-Proponent when the conditions set forth in Section 8.02 of the Plan have been satisfied or waived in accordance with the Plan; notice thereof shall be filed on the docket within two business days by the Co-Proponent. The Effective Date shall not occur until the Co-Proponent has paid those claims to be paid directly and deposited the balance of the Plan Funding with the Plan Administrator. Notwithstanding the foregoing, if the Effective Date shall not have occurred prior to June 2, 2025, or by such later date as is approved, after notice and a hearing, the Confirmation Order shall be vacated by the Bankruptcy Court. If the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors or of any other party in interest.

**5.** Binding Effect. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtors who held such Claim or interest at any time during the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim

---

[3] "**Plan Documents**" means the Plan and all attachments thereto, including the Plan Administrator Agreement, which is also hereby approved, attached hereto as **Exhibit "A"**.

15125916

or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**6.** <u>Vesting of Estate Property; Transfers</u>. On the Effective Date, except as provided in this Section, all assets, property, or interests of each Debtor's estate, as provided in the Plan (the "<u>Plan Consideration</u>"), shall vest in Newco or any affiliate thereof (as determined by Co-Proponent in its sole discretion) free and clear of all Claims, Liens, charges, encumbrances, Equity Interests, and other interests except as otherwise expressly provided in any Plan Document or this Order.  This free and clear vesting of assets, property, and interests is intended to be construed as broadly as possible and includes, without limitation, theories sounding in successor liability, successor in interest liability, and fraudulent transfer liability, the Court understanding full well that it is Newco's intention to conduct business using the "Sickles Market" name from the same location, using the same phone number, website URL, and accouterments of identification, and employing Robert H. Sickles and members of his family. To ensure that the public at large is aware of the change in ownership of that business, Newco shall issue a press release within 30 days after it opens the physical location of the old Sickles Market for business, announcing the change. Notwithstanding anything contained in this Order or the Plan, neither the assets nor the equity in Sickles Market LLC will vest in Newco. The Debtors and the Co-Proponent agreed that Sickles Market, LLC will commence an assignment for the benefit of creditors ("**ABC**") and that the Co-Proponent will not take ownership of that entity (Sickles Market, LLC) or its assets under the Plan.  As a technical matter, the equity will revest in Robert H. Sickles, but he is bound by this Order and by contract with the Co-Proponent to commence the ABC shortly.

**7.** <u>Plan Funding/Revesting</u>. On or before the Effective Date as provided below, the Co-Proponent shall pay: (a) subject to the last sentence of this paragraph, $5,750,000 plus payment of any future force-placed insurance advances made by Northfield Bank, to Northfield Bank, in good and available funds via wire transfer to satisfy its secured Proof of Claims in full; (b) $585,000 plus $350 per day each day for each day after April 1, 2025, until paid in full, to BCC/Bluestone to satisfy its Claims in full; and (c) $80,000 to the PACA Creditors to the extent

15125916

they are not paid a total of $80,000 from the proceeds of the sale of assets in the Assignment for

the Benefit of Creditors proceedings of Sickles Market Provisions, LLC prior to June 2, 2025

(the "**Outside Date**"). Provided the PACA Creditors receive the full $80,000.00 by the Outside

Date, the PACA Creditors shall have no other Claim or other right of recovery from the Debtors,

the Co-Proponent, or any of their respective affiliates, and the Debtors or the Plan Administrator

will file a motion seeking to dismiss the related adversary proceeding after the PACA Creditors

are paid as provided in this Confirmation Order. The PACA Creditors reserve all rights and

remedies in the event they are not paid the full $80,000 by the Outside Date.  Notwithstanding

anything else in this Confirmation Order to the contrary, the PACA Creditors are entitled to and

shall file a claim in the assignment for the benefit of creditors of Sickles Market Provisions, LLC

proceedings. On the Effective Date, the Co-Proponent shall fund the Plan Administrator as

follows: (c) $848,325.87 to satisfy in full the claims of the New Jersey Division of Taxation; (d)

$50,000 to be paid to unsecured creditors; (e) $556,729.59 to satisfy in full the claims of former

employees on account of their allowed wage claims plus two week's severance and any costs

related to such distribution; (f) $900,000 to pay the Allowed Fees of Genova Burns, LLC, to be

distributed strictly as provided in paragraph 8 below; (g)  funds sufficient to satisfy in full all

fees due to the U.S. Trustee through the closing of these Cases to the extent set forth in

paragraph 20(o); (h) $80,000 to be distributed strictly as provided in paragraph 8 below; (i)

$32,771.03 to be distributed strictly as provided in paragraph 8 below; and (j) $50,000 to fund

the fees and expenses of the Plan Administrator (cumulatively, (a) through (j), the "**Plan

Funding**.").  Notwithstanding the above or anything contained herein, if Northfield Bank is not

paid and in receipt of the sum of $5,750,000.00 in good and available funds by June 2, 2025, a

breach of the Plan or this Order occurs, or this Order is vacated, then Northfield Bank shall be

permitted to demand and seek full recovery of all amounts due and owing in connection with its

loan documents with the Debtors and the full amount of its secured Proof of Claims filed against

the Debtors in each respective Case. Notwithstanding anything contained in this Order or the

Plan, the liens, claims, and security interests of Northfield Bank shall revest and continue

15125916

unaffected on the Debtors' assets upon entry of this Order and shall be deemed released upon payment in full to Northfield Bank as provided in this Order.

8.      Escrows. The amounts referenced in paragraphs 7(f), (h), and (i) shall be escrowed separately by the Plan Administrator and each such escrow may be used only for the following purposes: (a) the $900,000 escrowed for the Allowed Fees of Genova Burns, LLC shall be used by the Plan Administrator exclusively to pay the finally Allowed fees and expenses of Genova Burns; and (b) the $32,771.03 escrowed for the IRS shall be used by the Plan Administrator exclusively to pay the IRS on its Allowed Claim as provided below. To the extent any of the aforementioned amounts of money are not needed for their specific purpose, the Plan Administrator shall promptly return such amounts to the Co-Proponent. Genova Burns shall not have any other Claim or other right of recovery from the Debtors, the Co-Proponent, or any of their respective affiliates for work performed after the entry of this Order and before the Effective Date. The Co-Proponent has agreed not to object to the Allowed fees and expenses of Genova Burns, so long as such fees and expenses do not exceed $900,000,00. Should an Order be entered awarding fees to Genova Burns, LLC prior to the Effective Date, the Co-Proponent shall pay Genova Burns, LLC $800,000.00 on the Effective Date and shall deliver to the Plan Administrator the additional sum of $100,000.00, to be held in escrow until the Assignee for the Benefit of Creditors of Sickles Market, LLC has sold the equipment of that entity. The $100,000.00 shall be paid to Genova Burns, LLC no matter the results of the sale or who the buyer of the equipment is.

9.      Pre-Effective Date Actions. Robert H. Sickles is authorized and directed to execute a Deed of Assignment for the Benefit of Creditors for Sickles Market, LLC, as and when directed to do so by the Co-Proponent.

10.     Exemptions. The issuance, transfer, or exchange of a security under the Plan, or the making or delivery of an instrument of transfer of property under the Plan, shall not be subject to any stamp, mansion, bulk sale, or similar tax, or any realty transfer fee or similar fee, to the fullest extent provided by section 1146(a) of the Bankruptcy Code, whether such action is taken by the Plan Administrator, the Co-Proponent or any affiliate thereof, or any other Person.

15125916

Pursuant to section 1145 of the Bankruptcy Code, the issuance of any equity interests in the Co-Proponent or any affiliate thereof is exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.

**11.** <u>Discharge</u>. On the Effective Date, pursuant to section 1141(d)(1) of the Bankruptcy Code, Robert H. Sickels is discharged from any debt arising before the date of confirmation and from any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**12.** <u>Exculpation and Injunctions</u>. Subject to the occurrence of the Effective Date and provided that Northfield Bank's Claims and the PACA Creditors' Claims have been indefeasibly paid by June 2, 2025 ("Outside Date") as required by this Order, effective as of the Effective Date, all existing Claims against and Interests in the Robert H. Sickles case shall be, and shall be deemed to be, discharged and terminated, and all Liens against or security interests in any Robert H. Sickles' Estate property shall be, and shall be deemed to be, discharged, and Robert H. Sickles shall not have any liability on account of any and all such Claims or Interests, except to the extent expressly provided by the Plan or this Order. For clarity, all existing Claims by a Debtor or any affiliate thereof against another Debtor or any affiliate thereof shall also be deemed to be discharged as to Robert H. Sickles and terminated as to AHS Realty LLC.

**13.** <u>Additional Provisions Regarding the IRS</u>. Notwithstanding the foregoing, Internal Revenue Service Proof of Claim No. 10-2 shall be handled as follows: On or before the Effective Date, the Co-Proponent shall deposit $32,771.03 with the Plan Administrator for the purpose of paying Proof of Claim No. 10-2, to the extent the Allowed amount of such Claims is at least that amount. If the Allowed amount is less, then the Plan Administrator shall return the excess to the Co-Proponent. If the Allowed amount is more, then the IRS shall have no other Claim or other right of recovery from the Co-Proponent, or any of its affiliates. In the Debtors' sole discretion,

15125916

the Debtors may choose to (i) file amended 2023 tax returns, which the Debtors believe will eliminate all liability to the IRS, or (ii) choose to have the Plan Administrator release the funds escrowed for payment of Proof of Claim No. 10-2 to the Internal Revenue Service and pay the Co-Proponent the amount of funds released for payment of Proof of Claim No. 10-2. The terms of any repayment shall be those agreed upon by and between Robert H. Sickles and the Co-Proponent. The amount paid to the Plan Administrator shall be held in escrow pending the IRS review of any amended returns. For the sake of clarity, (a) to the extent there is any remaining liability to the Internal Revenue Service pursuant to Proof of Claim No. 10-2 (or as such Claim may be amended), Robert H. Sickles shall not be discharged from such Claim, and (b) the secured claim of Northfield Bank shall continue to accrue and continue to be fully secured until paid in full on the Effective Date, with all of its liens, claims, and security interests unaffected by the entry of this Order, but with each automatically discharged upon its payment in full on the Effective Date. Moreover, provided the PACA Creditors are paid in full the $80,000.00 by the Outside Date, Adversary Proceeding Nos.: 24-01486-CMG and 24-01487-CMG shall be dismissed with prejudice as to all claims and all parties joined therein upon the Effective Date. Additionally:

  a. Robert H. Sickles shall file any amended returns for the tax years included in Claim No. 10 no later than July 1, 2025;

  b. If Robert H. Sickles does not file amended returns for the tax years included in Claim No. 10 by July 1, 2025, Claim No. 10 will be paid in full by August 1, 2025;

  c. If Robert H. Sickles files amended returns for the tax years included in Claim No. 10 by July 1, 2025, then Claim No. 10 shall be paid in full within 30-days of any subsequent amendment to Claim No. 10 submitted by IRS, provided, however, that Robert H. Sickles shall have the right to object to any amendment to Claim No. 10 within 30-days of any such amendment.

  d. In the event Robert H. Sickles objects to any amendment to Claim No. 10, the Allowed amount of Claim No. 10 (if any) shall be paid in full within 30 days of the order determining the Debtor's objection becoming a final order.

**14.** <u>Executory Contracts and Unexpired Leases</u>. On the Effective Date, each Executory Contract and Unexpired Lease of the Debtors, with the exception of the Operating Agreements and subject to the order [Dkt. #244] approved by this Court contemporaneously with

15125916

this Order, is rejected without the need for further action by any party or order of the Court, except for any such contract or lease that was previously rejected, or that previously expired or terminated in accordance with its terms. All Proofs of Claim with respect to Claims arising from any rejection of an Executory Contract or Unexpired Lease by operation of the Plan and this Order, if any, must be filed within thirty (30) days after the date of entry of this Order. Any such Claims not timely filed shall be forever barred. For clarity, this provision of the Order applies to any Executory Contract and Unexpired Lease between a Debtor or any affiliate thereof and another Debtor or any affiliate thereof. Notwithstanding entry or approval of the Operating Agreements, neither Newco, the Co-Proponent nor anyone acting on their behalf shall have any possessory, tenancy, or occupancy rights or interest or any claims whatsoever against the Debtors, the Debtors' estate, the Debtors' assets or against any party or creditor, by way of Section 506 (c) of the Bankruptcy Code or otherwise beyond the Outside Date if Northfield Bank has not been paid by then. For clarity, the Operating Agreements and any advances made in relation thereto are fully subordinate to the Claims and liens of Northfield Bank, including but not limited to the Northfield mortgage, liens, and security interests; and Newco shall provide Northfield Bank with an insurance certificate reasonably satisfactory to Northfield Bank naming it as an additional insured and loss payee.

15.    <u>Insurance</u>. In accordance with Section 6.07 of the Plan, the Co-Proponent and its assigns shall accede to, all insurance policies, other than life insurance policies, and any agreements, documents, and instruments relating to coverage of all insured Claims. Subject to the foregoing, nothing in the Plan or this Order alters the rights and obligations under applicable insurance policies (and the agreements related thereto) or modifies the coverage provided thereunder or the terms and conditions thereof.

16.    <u>Compromises</u>.  All references in the Plan to the Plan constituting a good faith compromise and settlement of all Claims of the Plan pursuant to section 9019 of the Bankruptcy Code, including but not limited to sections 5.08 and 6.08, are stricken.

15125916

**17.**    <u>Modification of Rights</u>. In accordance and compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of Holders of Claims as set forth in Article III of the Plan.

**18.**    <u>Additional Plan Provisions</u>. The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**19.**    <u>Cure of Defaults</u>. The Plan does not propose to cure any default. Thus, section 1123(d) of the Bankruptcy Code is inapplicable.

**20.**    <u>Specific Plan Amendments</u>. This Order controls in the case of an inconsistency between the Plan and this Order. Without limiting the effect of other provisions of this Order, the Plan is hereby amended as follows:

a.    The reference to an exhibit to the Disclosure Statement in the definition of "Revested Assets" is hereby stricken;

b.    Sections 4.03 through 4.05 and 5.09 of the Plan, as written, provided that all payments pursuant to the Plan will be paid by the Plan Administrator; these provisions are hereby amended to permit the Co-Proponent to pay (i) Northfield and the PACA Creditors in accordance with this Order on or before the Outside Date, and (ii) to pay BCC/Bluestone on or before the Effective Date;

c.    the blank line in Section 5.02 of the Plan is hereby filled in with "III";

d.    a new Section 5.03 of the Plan is hereby inserted into the Plan with the word "Intentionally Omitted" next to it, to make clear that nothing of substance was unintentionally omitted;

e.    Section 7.04 of the Plan (dealing with Assumed Contracts and Leases) is hereby deleted in its entirety and replaced with the words "Intentionally Omitted";

15125916

f. Section 8.04 of the Plan is hereby amended and replaced with the following: "Once an estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors and/or the Plan Administrator, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion;"

g. Section 10.13 of the Plan is hereby amended and replaced with the following: "The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code upon (1) transfer of all or substantially all of the property proposed by the Plan to be transferred, (2) assumption by the Debtors or by the successor to the Debtors under the Plan of the business or the management of all or substantially all of the property dealt with by the Plan, and (3) the commencement of distributions under the Plan";

h. Section 6.02 of the Plan is hereby amended and replaced with the following language: "Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed, dismissed, or for purposes of the Robert H. Sickels case, until the time a discharge is granted or denied;"

i. The last sentence of section 6.03 of the Plan is hereby amended and replaced with the following: "Notwithstanding the foregoing, the Debtors shall not retain any Claims or Causes of Action released pursuant to section 6.06 of the Plan against the Debtor's professionals, the Co-Proponent, or the Co Proponent's professionals, or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise)";

15125916

j.      Section 6.05(a) of the Plan is hereby amended and replaced with the following: "The treatment to be provided for Allowed Claims shall be in full satisfaction, of each such Claim against the Debtors";

k.      Section 6.05(b) of the Plan is hereby amended and replaced with the following:  "Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim against Robert H. Sickles are permanently enjoined from taking any of the following actions against Robert H. Sickles on account of any such Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Cases are closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtors. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan";

l.      Section 6.05(d) of the Plan is hereby amended and replaced with the following language:  "On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtors, on account of, or respecting any claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan."

m.      Section 6.06 of the Plan is hereby amended and replaced with the following: "Exculpation. Except as otherwise set forth in the Plan, neither the Debtors, the

15125916

Debtors' professionals, the Co-Proponent, the Co-Proponent's professionals, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any professional employed by any of them shall have or incur any liability on or after the Petition Date to and including the Effective Date  to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Cases, except for fraud, gross negligence or willful misconduct;

n.      Section 8.02(b) is hereby amended and replaced with the following: "The Confirmation Order shall provide for the injunctions and exculpation of the Persons provided for by the Plan;"

o.      "Sections 2.02(b) and 10.07 of the Plan are hereby amended and replaced with the following: "All US Trustee Fees payable on or before the Effective Date shall be paid by the Debtors, Newco, or the Co-Proponent in full in cash on the Effective Date. After the Effective Date, the Debtors, Newco, Co-Proponent, and/or the Plan Administrator shall pay any and all US Trustee Fees in full in cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtors and/or the Plan Administrator shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. The

15125916

Debtors, the Co-Proponent, and the Plan Administrator shall be jointly and severally liable to pay any and all US Trustee Fees when due and payable. Notwithstanding anything to the contrary in the Plan, (i) US Trustee Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to US Trustee Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan. This Section 10.07 shall govern and control to the extent it conflicts with or is in any way inconsistent with any other provision of the Plan.  The Co-Proponent shall be required to fund all US Trustee Fees if the Plan Funding is not sufficient to fund same.  For the avoidance of doubt, for purposes of calculating US Trustee Fees, disbursements include any payments made by the Debtors or on behalf of the Debtors. As such, payments made directly by the Co-Proponent or Newco, or any affiliate of the Co-Proponent or Newco, on account of Allowed Claims shall be deemed to be payments by the Plan Administrator, and the Co-Proponent or Newco shall make such additional payments to the Plan Administrator as necessary to pay the related US Trustee Fees when due, and as are in effect as of the date of this Order, and until the Chapter 11 cases are converted to chapter 7, dismissed, or closed."

p.    Section 1.01 of the Plan is hereby amended to change the term "Plan Co-Proponent" to "Co-Proponent."

**21.**    Administrative Expense Claims. In accordance with Article II of the Plan, all Administrative Expense Claims, other than Professional Compensation,  shall be satisfied, as and when Allowed, by payment in full and in Cash or as otherwise agreed to by such Holder, on the later of (i) the Effective Date and (ii) the first Business Day that is 15 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim. In accordance with Section 5.15 of the Plan, the Plan Administrator shall file and serve a copy of any such objection upon the holder of an Administrative Claim to which an objection is made on or before the latest to occur of: (i) 30 days after the Effective Date, (ii) 30 days after a request for payment

15125916

or proof of claim is timely filed and properly served upon the Plan Administrator, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods; provided, however, the Plan Administrator shall have no standing to object to Professionals' applications for allowance of compensation and reimbursement of expenses in these Cases.

22. _Professional Compensation_. Each Professional shall file an application for allowance of final compensation and reimbursement of expenses in these cases no later than thirty (30) days after the Effective Date, and objections to any such applications shall be filed in accordance with the Bankruptcy Rules and the Local Rules. Any professional fees and reimbursements or expenses incurred subsequent to the entry of this Order shall be borne by the party who contracted for such services, without application to the Court, and not by the estates or any other party (except to the extent contracted for by such party). Genova Burns, LLC shall, during the period post-confirmation and pre-Effective Date, reasonably communicate, and otherwise cooperate with the Assignee in the ABC of Sickles Market, LLC and the Co-Proponent in furtherance of the ABC and the Effective Date at no additional charge; provided, Genova Burns shall not be required to perform substantive legal services such as drafting pleadings, litigating, or making appearances in any court, unless it enters into a written agreement to do so.

23. _Prior Orders_. Subject to the terms of the Plan and this Order, all prior orders entered in these cases, and all documents and agreements executed by the Debtors as authorized and directed thereunder, shall be binding upon and shall inure to the benefit of Robert H. Sickels, AHS Realty LLC, and the Co-Proponent and its affiliates in accordance with the Plan. Notwithstanding anything contained herein to the contrary, the Order Granting Motion For Relief From the Automatic Stay Through Entry of Final Judgment of Foreclosure Pursuant to 11 U.S.C. §§362(d)(1) and 362 (d)(2) with Respect to Real Property Commonly Known as 4 Heathcliff Road, Rumson, New Jersey [Case No. 24-14781-CMG; Docket 105], shall remain enforceable and unaffected by this Order, the Plan, or Confirmation of the Plan, until the claim of Northfield Bank has been paid in full.

15125916

**24.**    Authorization in Furtherance of Plan. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized and directed to accept any and all documents, mortgages, filings, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order. Without limitation, this applies, without limitation to the town of Little Silver and Rumson New Jersey, the County of Monmouth New Jersey, and any County Recorder's Office with respect to changing its records of land ownership to concur with the Plan.

**25.**    Further Assurances. Robert H. Sickles is authorized and directed to execute and deliver any and all documents and instruments and to take any and all actions as may be reasonably requested by the Co-Proponent to effectuate the transfer of the Debtors' right, title, and interest in and to the Plan Consideration, and to otherwise implement the terms of the Plan and this Confirmation Order.

**26.**    Construction; Interpretation. The failure to specifically describe or include any particular provision of the Plan or any related document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan (including any exhibits thereto) be approved and confirmed in its entirety.  Except as expressly provided by this Order, each provision of the Plan is valid and enforceable in accordance with its terms and is nonseverable and mutually dependent. In the event of any conflict between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).  In the event of any conflict between this Order and the Plan or any other agreement, instrument, or document intended to implement the provisions of the Plan, the terms of this Order shall govern.

**27.**    Jurisdiction. From and after the Effective Date, to the fullest extent that is legally permissible and provided for in the Plan, the Court shall retain jurisdiction over all matters arising out of and related to these bankruptcy cases and this Order.

15125916

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**28.**    Final Order. Notwithstanding Bankruptcy Rule 3020(e), this Order shall be effective and enforceable immediately upon entry. This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

**\*\*END OF ORDER\*\***

15125916

Execution Version

# PLAN ADMINISTRATOR AGREEMENT

This PLAN ADMINISTRATOR AGREEMENT (the "Agreement") is made and entered into, as of April 10, 2025 by and among Robert H. Sickles and AHS Realty LLC (collectively, the "Debtors"), 1663 Partners, LLC ("1663") and Matthew Brash of Newpoint Advisors Corporation (the "Plan Administrator"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Confirmation Order (or, by incorporation into the Confirmation Order, the Plan).

## RECITALS

WHEREAS, on May 9, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"); and

WHEREAS, on December 12, 2024, the Debtors and the Plan Co-Proponent ("*Co-Proponent*") filed the Second Amended Joint Chapter 11 Plan of Reorganization of the Debtors (as amended or modified from time to time, the "Plan"); and

WHEREAS, by order dated April 10, 2025 (the "Confirmation Order"), the Bankruptcy Court confirmed the Plan; and

WHEREAS, under the terms of the Plan, as of the Effective Date and pursuant to the Confirmation Order, the Co-Proponent shall transfer the Plan Funding (as defined in the Plan but less any amounts Co-Proponent pays directly to holders of Claims on the Effective Date as may be permitted under the Confirmation Order); so that, among other things, (i) the Plan Funding can be paid to holders of Allowed Claims of the Debtors in accordance with the Plan in an orderly and expeditious fashion and (ii) disputed claims can be resolved; and

WHEREAS, this Agreement is entered into under and pursuant to the Plan which provides for the appointment of the Plan Administrator to administer the Plan Funding for the benefit of holders of Allowed Claims, and to provide administrative services relating to the implementation of the Plan; and

WHEREAS, the Plan Administrator has agreed to serve as such upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in accordance with the Plan and in consideration of the promises and of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

## I   APPOINTMENT

1.1   Appointment. Effective as of the Effective Date, the Plan Administrator is appointed to act as the Plan Administrator under the Plan to implement the Plan and any applicable orders of the Bankruptcy Court, subject to and in accordance with the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Debtors and the Plan Administrator acknowledge that the Plan Administrator shall be a fiduciary for the Debtors' Estates. Notwithstanding anything contained in the Plan or this Agreement, the Plan Administrator

15134019

Execution Version

shall not be empowered to commence or pursue causes of action on behalf of the Debtors or their estates against Debtors' professionals, nor object to or assert a position with regard to the award of fees to the Debtors' professionals.

  1.2 <u>Representative of the Estates</u>. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors' estates (the "<u>Estates</u>"), which shall be managed and administered through the Plan Administrator for all purposes of the Plan.  The Plan Administrator shall have full authority to administer the provisions of the Plan subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order.  To the extent necessary, on and after the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a Party.

## II  RIGHTS, POWERS, AND DUTIES OF PLAN ADMINISTRATOR

  2.1 <u>General</u>. As of the Effective Date, the Plan Administrator shall take possession and charge of the Plan Funding and, subject to the provisions hereof and in the Plan, shall have full right, power, and discretion to manage the Plan Funding. Except as otherwise provided herein and in the Plan, the Plan Administrator shall have the right and power to enter into any covenants or agreements binding the Estates and in furtherance of the purpose hereof and of the Plan and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed necessary by the Plan Administrator to be consistent with and advisable in connection with the performance of his duties hereunder. On and after the Effective Date, the Plan Administrator shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Plan Administrator including section 5.13 of the Plan and all other acts that may be necessary or appropriate in connection with the Plan, as contemplated by the Plan, including, without limitation:

   (a) To maintain escrows and other accounts, make Distributions, and take other actions consistent with the Plan and the implementation hereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Debtors or the Plan Administrator, even in the event of the dissolution of the Debtors.

   (b) To object to any Claims (Disputed or otherwise), excluding the fees of the Debtors' professionals  and to defend, compromise, and/or settle any Claims prior to or following objection without the necessity of approval of the Court, and/or to seek Court approval for any Claims settlement, to the extent thought appropriate by the Plan Administrator or to the extent such approval is required by prior order of the Court.

   (c) To make decisions without further Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Plan Administrator and to pay, from the Administrative Claims Reserve, the charges incurred by the Plan Administrator on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the implementation of the Plan, without application to the Court; provided, however, that the funds earmarked by the Confirmation Order for Genova Burns and the PACA Claimants shall be unavailable for any purpose other than to pay those respective parties or to return whatever amounts remain after paying them in accordance with the Confirmation Order.

15134019

Execution Version

      (d)     To make all Distributions to holders of Allowed Claims provided for or contemplated by the Plan.

      (e)     To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Court and as deemed appropriate by the Plan Administrator in accordance with the investment and deposit guidelines set forth in Section 2.4 of this Agreement.

      (f)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtors or the Plan Administrator thereunder.

      (g)     To utilize Plan Funding to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs it deems necessary or advisable to insure the acts and omissions of the Plan Administrator, provided the costs thereof do not diminish the amount required to be paid to creditors under the Plan.

      (h)     To implement and/or enforce all provisions of the Plan.

      (i)     To maintain appropriate books and records (including financial books and records).

      (j)     To pay fees for each of the Cases incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Court and serve on the United States Trustee monthly financial reports until such time as such reports are no longer required, a final decree is entered closing these Cases, or the Cases are converted or dismissed.

      (k)     To do all other acts or things consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable with respect to implementing the Plan, other than commencing or causing the commencement of causes of actions or objecting to fees of professionals.

    2.2    _Costs_. On and after the Effective Date, the Plan Administrator shall reserve Cash reserves from the Plan Funding in conformity with the Plan and the Confirmation Order,. In the event that amounts held by the Plan Administrator, together with proceeds of any disposition of Plan Funding available for such purpose, are insufficient to make payments, the Plan Administrator shall use Cash sufficient for such purpose that has otherwise been made available from any other sources. Nothing in this Section 2.2 shall relieve the Plan Administrator from their obligation to release escrowed funds for PACA creditors or the Debtor's professionals as provided in the Plan, or entitle or enable the Plan Administrator to use any escrowed funds for any purpose other than that for which the funds were escrowed.

    2.3    _Distributions_. Pursuant to the Plan, the Plan Administrator shall record and account for all proceeds received upon any disposition of Plan Funding (after deduction therefrom of appropriate reserves) for distribution in accordance with the provisions of the Plan and the Confirmation Order.

15134019

Execution Version

2.4    <u>Limitations on Investment Powers of Plan Administrator</u>. Funds in the Plan Funding shall be invested in demand and time deposits in banks or other savings institutions or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Plan Funding as determined by the Plan Administrator.

2.5    <u>Liability of Plan Administrator</u>.

(a)    <u>Standard of Care</u>. Except in the case of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, the Plan Administrator shall not be liable for any loss or damage by reason of any action taken or omitted by it pursuant to the discretion, powers and authority conferred, or in good faith believed by the Plan Administrator to be conferred, on the Plan Administrator by this Agreement, the Plan, the Confirmation Order.

(b)    <u>No Liability for Acts of Predecessors</u>. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in the office prior to the date on which such successor becomes the Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility.

(c)    <u>No Implied Obligations</u>. The Plan Administrator shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Plan Administrator.

(d)    <u>Reliance by Plan Administrator on Documents or Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Plan Administrator may rely on and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Plan Administrator to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator also may engage and consult with legal counsel and other agents and advisors and shall not be liable for any action taken or suffered by the Plan Administrator in reliance upon the advice of such counsel, agents, or advisors.

(e)    <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Plan Administrator, or seeking to assert claims against the Debtors, shall look only to the Plan Funding to satisfy any liability incurred by the Plan Administrator to any such Person in carrying out the terms of this Agreement, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability. Any persons seeking to assert claims for any reason shall have no authority to look to funds escrowed for PACA creditors or the Debtor's Professionals to satisfy any liability.

2.6    <u>Selection of Agents</u>. The Plan Administrator may engage any employee of the Debtors or other persons and also may engage or retain brokers, banks, custodians, investment and financial advisors, attorneys, accountants (including existing accountants for the Debtors), and other advisors and agents in each case without Bankruptcy Court approval. The Plan Administrator may pay the salaries, fees, and expenses of such persons out of the Plan Funding or proceeds thereof. The Plan Administrator shall not use funds escrowed for PACA creditors or the Debtor's Professionals for these purposes. In addition, the parties acknowledge that Plan

4

15134019

Funding may be advanced to satisfy such salaries, fees, and expenses. The Plan Administrator shall not be liable for any loss to the Plan Funding or any person interested therein by reason of any mistake or default of any such Person referred to in this Section 2.6 selected by the Plan Administrator in good faith and without either gross negligence or intentional malfeasance.

2.7     Plan Administrator's Compensation, Indemnification, and Reimbursement.

(a)     As compensation for services in the administration of this Plan Funding, the Plan Administrator shall be compensated as provided in Section 5.12 of the Plan. The Plan Administrator shall also be reimbursed for all documented actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of its duties hereunder.  The $50,000.00 set aside for payment of the fees and costs of the Plan Administrator and his/her professionals shall be a "hard cap," and no fees or expenses shall be due from the Plan Funding in excess of that amount. Notwithstanding the foregoing, nothing shall be construed to prohibit the Plan Administrator from accepting compensation directly from the Co-Proponent should the amounts otherwise available for compensation be insufficient to pay for all of the Plan Administrator's services and expenses, and the Co-Proponent agrees. Under no circumstances shall funds escrowed for PACA creditors or the Debtor's Professionals be used for payment of the Plan Administrator's fees or expenses.

(b)     It is anticipated and intended that the Plan Administrator devote his or her attention to the prompt and orderly administration of the Plan Funding and Plan but that doing so is not a full-time endeavor. The Plan Administrator may accept employment elsewhere while serving as Plan Administrator, provided such additional employment does not result in a conflict of interest with his obligations hereunder.

(c)     The Plan Administrator is hereby authorized to obtain all reasonable insurance coverage for himself, his agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Plan Administrator and his agents, representatives, employees or independent contractors under the Plan and this Agreement, provided that the costs thereof do not reduce the Plan Funding.

2.9     Records of Plan Administrator. The Plan Administrator shall maintain accurate records of receipts and disbursements and other activities of the Plan Administrator. The books and records maintained by the Plan Administrator, as well as any and all other books and records of the Debtors, may be disposed of by the Plan Administrator at such time as the Plan Administrator determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Plan Administrator or holders of Allowed Claims, or upon the winding up of the affairs of the Debtors, provided that at least 30 days' notice of the intention to dispose of such books and records has been filed with the Court and provided to all persons entitled to notice under the Plan.

## III    AMENDMENT OF PLAN ADMINISTRATOR AGREEMENT OR CHANGE IN ADMINISTRATOR.

3.1     Resignation of the Plan Administrator. The Plan Administrator may resign by an instrument in writing signed by the Plan Administrator and filed with the Bankruptcy Court,

15134019

Execution Version

provided that the Plan Administrator shall continue to serve as such after his resignation for 30 days or, if longer, until the time when appointment of his successor shall become effective in accordance with Section 3.3 hereof.

3.2    <u>Removal of the Plan Administrator</u>. The Co-Proponent may remove the Plan Administrator with or without cause at any time. Notice of such removal must be filed with the Bankruptcy Court within two (2) business days of the removal date.  Upon removal of the Plan Administrator in accordance with this Section 3.2 other than for cause, the Plan Administrator shall be entitled to all compensation that has accrued through the effective date of termination but remains unpaid as of such date which payment shall be made promptly from the Administrative Claims Fund. For the purposes of this Agreement, "cause" shall mean (a) the willful and continued refusal by the Plan Administrator to perform his duties as set forth herein or (b) gross negligence, gross misconduct, fraud, embezzlement, or theft.

3.3    <u>Appointment of Successor Plan Administrator</u>. In the event of the death, resignation, termination, incompetence, or removal of the Plan Administrator, the Co-Proponent may appoint a successor Plan Administrator without the approval of the Bankruptcy Court, which the parties acknowledge shall nevertheless retain jurisdiction to resolve any disputes in connection with the service of the Plan Administrator or his successor. The Co-Proponent shall file such notice of appointment with the Court within two (2) business days of the appointment of a successor Plan Administrator.  Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court and to the predecessor Plan Administrator (if practicable) an instrument accepting such appointment and the terms and provisions of this Agreement, and thereupon such successor Plan Administrator, without any further act, deed or conveyance, shall become vested with all the rights, powers and duties of the retiring Plan Administrator.

3.4    <u>Continuity</u>. Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence, or removal of the Plan Administrator shall not operate to terminate or to remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Plan Administrator. In the event of the resignation or removal of the Plan Administrator, the Plan Administrator shall promptly execute and deliver such documents, instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court or the successor Plan Administrator.

3.5    <u>Amendment of Agreement</u>. This Agreement may be amended, modified, terminated, revoked, or altered only upon order of the Bankruptcy Court with notice to parties-in-interest.

## IV    RETENTION OF JURISDICTION

Subject to the following sentence, the Bankruptcy Court shall have exclusive jurisdiction over the Plan, the Plan Administrator, and the Plan Funding as provided in the Plan and Confirmation Order, including the determination of all controversies and disputes arising under or in connection with the Plan or this Agreement. However, if the Bankruptcy Court abstains or declines to exercise such jurisdiction or is without jurisdiction under applicable law, any other court of competent jurisdiction may adjudicate any such matter. All holders of Allowed Claims

15134019

consent to the jurisdiction of the U.S. District Court for the District of New Jersey and the state courts sitting in New Jersey over all disputes related to this Agreement. The Debtors, all professionals, and all creditors shall retain standing with regard to any post-Confirmation Date motion brought before the Bankruptcy Court for resolution, including with respect to this Agreement, the Plan, and any Plan funding.

## V    MISCELLANEOUS

5.1    <u>Applicable Law</u>. This Agreement shall be construed in accordance with and governed by the laws of the State of New Jersey without giving effect to principles of conflict of laws, but subject to any applicable federal law.

5.2    <u>Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

5.3    <u>Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

5.4    <u>Interpretation</u>. Section and paragraph headings contained in this Agreement are for the convenience of reference only and shall not affect the meaning or interpretation of any provision hereof.

5.5    <u>Savings Clause</u>. If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court, such invalidity or unenforceability shall not affect any other clause or provision hereof, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose hereof, as if such invalid or unenforceable provision had never been contained herein.

5.6    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement by and among the parties, and there are no representations, warranties, covenants, or obligations with respect to the subject matter hereof except as set forth herein or therein. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to the Plan Administrator. Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the holders of Allowed Claims any rights or remedies under or by reason of this Agreement.

5.7    <u>Counterparts</u>. This Agreement may be executed by facsimile or electronic transmission and in counterparts, each of which, when so executed and delivered, shall be an original document, but all of which counterparts shall together constitute one and the same instrument.

5.8    <u>Notices</u>.

(a)    All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be deemed given five

15134019

Execution Version

Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission.

      **(i)**     **if to the Plan Administrator:**

         Matthew Brash at mbrash@newpointadvisors.us

      (ii)     **if to the Reorganized Debtor:**

      (iii)     Robert H. Sickles at bsickles@sicklesmarket.com

      **(iv)**     **If to the Co-Proponent:**

         Jonathan Friedland at jfriedland@muchlaw.com and David Karp at david.karp@srz.com

      (v)     **if to any holders of Allowed Claims:**  to such address as such holder shall have furnished to the Debtors in writing prior to the Effective Date.

      (b)     Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice to the Plan Administrator in the same manner as above.

      5.9     Effective Date. This Agreement shall become effective as of the Effective Date as that term is defined in the Plan.

      5.10     Successors and Assigns. This Agreement shall be binding upon each of the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties, the holders of Allowed Claims, and, subject to the provisions hereof, their respective successors and assigns.

      5.11     Conflict with the Plan. In the event of any conflict between the terms of this Agreement and the terms of the Plan, the Plan shall govern.  In the event of a conflict between the Confirmation Order and this Agreement, the Confirmation Order shall govern.

      IN WITNESS WHEREOF the undersigned have caused this Agreement to be executed as of the day and year first above written.

**1663 PARTNERS, LLC**

By: _____

Name: _____

Title: _____

**PLAN ADMINISTRATOR**

By: _____

Name: _____

Title: _____

15134019

Execution Version

**ROBERT H. SICKLES ON BEHALF OF THE
DEBTORS**

By: _____

15134019